729 So.2d 834 (1998)
STATE FARM FIRE AND CASUALTY COMPANY
v.
Katherine K. OWEN.
No. 1961950.
Supreme Court of Alabama.
August 21, 1998.
Opinion Modified on Denial of Rehearing March 12, 1999.
*835 Micheal S. Jackson and Michael B. Beers of Beers, Anderson, Jackson, Hughes & Patty, P.C., Montgomery, for appellant.
Toby D. Brown and David G. Wirtes, Jr., of Cunningham, Bounds, Yance & Brown, L.L.C., Mobile, for appellee.
HOOPER, Chief Justice.
The defendant State Farm Fire and Casualty Company appeals from the judgment entered on a jury verdict awarding the plaintiff Katherine Owen $1,339 in compensatory damages and $130,000 in punitive damages for fraudulent suppression. Owen's claim arose from the sale of a State Farm personal articles insurance policy by State Farm's agent George Jones. State Farm argues that the trial court erred in denying its renewal of the motion for a judgment as a matter of law, or in the alternative, for a new trial.
In determining whether State Farm was entitled to a judgment as a matter of law, we apply the same standard the trial court applied in addressing the motion initially. Thus, we must determine whether Owen produced sufficient evidence in support of each element of her fraudulent-suppression claim to produce a conflict warranting a jury's consideration. Ogle v. Long, 551 So.2d 914, 915 (Ala.1989). The standard for testing the sufficiency of the evidence is the "substantial evidence rule." Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In considering the sufficiency of the evidence, we must view the evidence in the light most favorable to the nonmovant, Owen. Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988).
The evidence presented at trial, either undisputed or viewed in the light most favorable to Katherine Owen, was substantially as follows. Owen is a schoolteacher who holds a master's degree. In 1985, her mother gave her a .42 carat diamond as a gift. Intending *836 to use it as an engagement ring, Owen had a Mobile jeweler mount the diamond in a gold band. In 1987, when she filed insurance claims on two bicycles that had been stolen from her home, Owen became concerned about insuring the ring. On April 9, 1987, Owen went to the office of George Jones to inquire about insuring the engagement ring and another ring. Jones, a State Farm agent who lived in Owen's neighborhood, had previously sold Owen a renter's policy and a homeowner's policy. Owen executed an application for a personal-articles policy. Jones told Owen that, to purchase the policy, she needed to have the jewelry appraised "to see how much insurance [she] needed." Owen took both pieces of jewelry to a jeweler, who appraised the engagement ring for $1,000. She returned the appraisal form to Jones's office the next day, but did not speak to Jones because he was out of the office.
The application Owen signed contained the following language immediately above the signature line:
"I understand that State Farm has the option of repairing or replacing the lost or damaged property and, that in the event of a cash settlement, I will be paid no more than the Company's cost to replace the item."

(Emphasis added.) Owen did not recall reading the application before signing it. State Farm subsequently issued Owen what is commonly known as a "replacement cost" policy. This type of policy provides that, in the event of a loss, either the insured item will be replaced or the policyholder will be paid the lower of the policy limits or the amount it would cost the insurer to replace the item. Owen believed that State Farm's cost to replace the jewelry would be the same as the appraisal price of the jewelry. Owen's policy included a liability limit of $3,700 and an "inflation guard," which increased the policy limits each year according to the rise in jewelry prices. Owen asked Jones to keep the policy in his office; she did not read it.
In 1995, Owen's engagement ring was stolen from her home. At the time of the theft, the policy limit applicable to the engagement ring had risen to $1,339. When Owen filed a claim for the loss, State Farm requested that she obtain another appraisal of the stolen ring. Owen went to the same jeweler who had originally appraised the ring, and, based on a description of the ring, he appraised it for $1,475.86. The State Farm adjuster, however, was able to obtain a replacement ring of like kind and quality for $898.70 from a local jeweler State Farm often used as a replacement vendor. Although that jeweler was not a part of the program, State Farm maintains a program that provides it with replacement jewelry at costs significantly lower than retail prices. State Farm established the replacement vendor system for some personal articles in 1983, but jewelry was not included in the program until the early 1990s. Owen, who was now divorced, decided that she did not want the engagement ring replaced. After she refused State Farm's offer to replace the ring, State Farm tendered a check to her for $898.70, the amount that would have been its cost to replace the ring.
Owen returned State Farm's check and subsequently sued State Farm and George Jones, alleging fraudulent misrepresentation and suppression. Owen claimed State Farm had misled her into believing that, in the event of a loss, she would receive the appraisal value of the jewelry. She was not informed that appraisal values are often inflated, a fact stated in State Farm's underwriting manual, and that State Farm would be able to obtain a replacement ring at a price significantly lower than the appraisal. Furthermore, she alleged that State Farm had failed to inform her that her premiums would be based on the appraisal value. This was a fraudulent practice by State Farm because, she claimed, State Farm would never pay her more than its discounted replacement cost.
Following a jury trial, State Farm and George Jones moved for a judgment as a matter of law on both fraud counts. The trial court granted their motion as to the misrepresentation claim, but denied it as to the suppression claim. The trial judge submitted that claim to the jury, framing it as follows:

*837 "[T]he Plaintiff alleges that ... State Farm and Mr. Jones had a duty to inform me that the premiums I would pay for the personal articles coverage would be based on the appraised value rather than the replacement cost value, that this appraised value was greater than the replacement cost ... when the defendants knew ... that the replacement cost would be the amount paid if there was a loss, a total loss. And further ... that the defendants knew at that time that the replacement cost was substantially less than the appraised value."
The jury returned a verdict on the suppression claim in favor of George Jones, but found State Farm liable and awarded Owen $1,339 in compensatory damages and $130,000 in punitive damages. The trial judge entered a judgment on the jury's verdict and later denied State Farm's renewal of the motion for a judgment as a matter of law, or, in the alternative, a new trial. State Farm appealed.
The tort of fraudulent suppression is codified at § 6-5-102, Ala.Code 1975:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
To support her fraudulent suppression claim under that section, Owen was required to produce substantial evidence establishing: (1) that State Farm had a duty to disclose the existing material fact; (2) that State Farm suppressed this material fact; (3) that State Farm's suppression of this fact induced her to act or to refrain from acting; and (4) that she suffered actual damage as a proximate result. Booker v. United American Ins. Co., 700 So.2d 1333, 1339 (Ala.1997). In addition, State Farm can be liable for suppression only if it had knowledge of the material fact it allegedly suppressed. Dodd v. Nelda Stephenson Chevrolet Inc., 626 So.2d 1288, 1293 (Ala.1993).
It is well established that a party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact. Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997); Jewell v. Seaboard Industrial, Inc., 667 So.2d 653 (Ala.1995); Bulger v. State Farm Mut. Auto. Ins. Co., 658 So.2d 425 (Ala.1995). Any analysis of a fraudulent-suppression claim must begin by asking the fundamental question whether the parties, given the situation, should be required to speak. In answering this question, we must examine what the parties actually did, as well as judge what they ought to have done. That process requires both legal analysis and factual inquiry. Our legal system assigns to the judge the responsibility of deciding questions of law, while it assigns to the jury the task of deciding the facts of a case. Because the analysis of whether there was a duty to disclose the fact involves both of these aspects, confusion has arisen at times over who properly is to decide the duty questionthe judge as the arbiter of the law or the jury as the factfinder. Indeed, Alabama's caselaw has suffered from this confusion and is full of decisions on both sides of the issue.
This present case requires us to resolve this conflict. Katherine Owen contends that whether State Farm had a duty to disclose was a question of fact, to be resolved by the jury. Whataburger, Inc. v. Rockwell, 706 So.2d 1220 (Ala.Civ.App.1997); Ballard v. Lee, 671 So.2d 1368 (Ala.1995); Baker v. Bennett, 603 So.2d 928 (Ala.1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993). State Farm contends that whether it owed Katherine Owen a duty of disclosure is a question of law, to be decided by the judge. Berkel & Co. Contractors, Inc. v. Providence Hospital, 454 So.2d 496 (Ala.1984); see also Sungas, Inc. v. Perry, 450 So.2d 1085 (Ala.1984); Hand v. Butts, 289 Ala.653, 270 So.2d 789 (1972).
The dominant view is that, even though a factual analysis is required, the question whether a duty exists is essentially a question of law and should be determined by the trial court. The leading treatise on tort law states the question of duty:
"[W]hether, upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the otheror, more simply, whether the interest *838 of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant. This is entirely a question of law, to be determined by reference to the body of statutes, rules, principles, and precedents which make up the law; and it must be determined only by the court. It is no part of the province of a jury to decide...."
W. Page Keeton et al., Prosser and Keeton on Torts § 37, at 236 (5th ed.1984); see also Stuart M. Speiser et al., The American Law of Torts § 9:3, at 1008, 1010 (1985); James A. Dooley, Modern Tort Law § 3.03 (1st ed.1977). For years, Alabama followed this prevailing interpretation, both in the fraud context[1] and in the negligence context:
"The determination as to the existence vel non of a duty resting upon a defendant is a question of law for the trial judge. The rule adhered to in our jurisdiction is succinctly stated in 57 Am.Jur.2d Negligence § 34 (1971):
"`The determination of any question of dutythat is, whether the defendant stands in such relation to the plaintiff that the law will impose upon him an obligation of reasonable conduct for the benefit of the plaintiffhas been held to be an issue of law for the court and never one for the jury.'"
Sungas, 450 So.2d at 1089. See also, Gilbert v. Gwin-McCollum Funeral Home, 268 Ala. 372, 106 So.2d 646 (1958); Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305 (1945).[2]
However, in recent years, this Court's decisions have strayed from this fundamental principle, by treating the question of a duty in a fraud case as a question of fact. The first case to deviate from that course was Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala.1980). In that case, this Court reversed a defendant's judgment based on a directed verdict on a fraudulent suppression claim, stating: "We hold that this evidence is sufficient to create a jury question as to the existence of a duty to disclose on [the defendant's] part." 384 So.2d at 87. This statement was made without any citation to authority or any legal analysis justifying its departure from basic tort law. The statement indicating that the question of duty is a jury question followed a paragraph explaining that one of the statutory bases for the determination that a defendant has a duty is "the particular circumstances of the case." § 6-5-102, Ala.Code 1975. Although the opinion does not state it explicitly, presumably the Court in Jim Short Ford Sales found that the responsibility for judging the "particular circumstances" belongs to the jury. Consider this statement: "[E]ach case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and, indeed, the words of the statute itself counsel flexibility." 384 So.2d at 87.
For four years, Jim Short Ford Sales remained, for the most part, an aberration in Alabama's caselaw. In 1983, the idea that the existence of a duty is a jury question resurfaced in Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala.1983). Citing the language quoted above from Jim Short Ford Sales, the Court affirmed a judgment based on a jury verdict, in part because, the Court said, the evidence created a jury question as to whether the defendant had had a duty to disclose. Again, apart from quoting Jim Short Ford Sales, the Court cited no precedent and gave no legal analysis to support the concept that the question of duty is a jury question.
One year after Waldrop, in an opinion authored by Chief Justice Torbert, this Court reaffirmed the principle that duty is a question of law. Berkel & Co. Contractors v. Providence Hosp., supra. Chief Justice Torbert also quoted the statement from Jim Short Ford Sales advising a flexible approach toward determining the question of duty, but *839 reached a conclusion different from that reached by Jim Short Ford Sales and Waldrop as to who is charged with making that determination. Citing Alabama caselaw holding that duty is a matter of law, he wrote: "In determining the existence of a duty, the trial court makes a legal decision." 454 So.2d at 506. With Berkel & Co., the Court seemingly returned to the correct division of powers.
In 1986, however, the Court provided an illustration of the old lawyer's trial adage "Say it once, say it twice, and, by the third time, it's a fact." In Lowder Realty, Inc. v. Odom, 495 So.2d 23 (Ala.1986), the majority opinion cited Berkel & Co. but went on to set up a fundamental conflict with it. Relying solely on Waldrop, the Court held that the question of the existence of a duty to communicate under § 6-5-102 is for the jury to decide. 495 So.2d at 26. The Lowder Realty Court, however, found that the facts of that case presented no special circumstances justifying submission of the duty issue to the jury. Id. Thus, unaccompanied by history or sifting analysis, was born the concept that whether a duty to disclose exists is a fact question for the jury. What was once an aberration in Jim Short Ford Sales became authority throughout the late 1980s and 1990s. The question regarding duty changed from being a legal question to being a question of fact, where evidence of special circumstances is presented. Hopkins v. Lawyers Title Ins. Corp., 514 So.2d 786 (Ala.1986); Lawyers Title Ins. Corp. v. Vella, 570 So.2d 578 (Ala.1990); Baker v. Bennett, supra; Interstate Truck Leasing, Inc. v. Bender, 608 So.2d 716 (Ala.1992); Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala. 1994); Ballard v. Lee, supra.
Now that the question is squarely presented to us, we hold that the existence of a duty is a question of law to be determined by the trial judge. Simply stated, the question of duty is a judgment whether the law will impose responsibility on a party for its conduct toward another. "[T]he concept of duty amounts to no more than `the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered." Speiser, § 9:3 at 1008. That judgment is at heart one that requires an analysis informed by precedent and principles. In other words, a duty analysis is inherently a legal analysis that entails an intellectual process of identifying, weighing, and balancing a number of competing factorsthe existing law of the jurisdiction, the practicability of imposing a duty, the demands of justice, and the interests of society. That is an analysis our legal system recognizes is best undertaken by a judge.
Of course, the concept of duty does not exist in a vacuum. It requires a relationship between two or more parties, a relationship that can be shown only through a history of contacts, conversations, and circumstances. Determining whether there is a duty necessarily requires analyzing the factual background of the case. In that sense, whether a duty exists is a mixed question of law and fact. Nevertheless, duty analysis does not become a jury function simply because fact questions are implicated in the analysis. Additionally, duty analysis does not become a jury function on the basis that § 6-5-102 allows the consideration of "special circumstances" in determining the obligation of disclosure. The statutory term "special circumstances" only creates a way of finding a duty outside the narrower "confidential relations" approach, by allowing the court to broaden its analysis into the facts surrounding the transaction. It does not follow that, by the mere use of the word "circumstances," the Legislature indicated an intent to make the question of the existence of a duty a jury question and thereby to depart from settled tort analysis. All things considered, the Legislature's use of the term "special circumstances" implies, if anything, that legal judgment is required, i.e., there must be some inquiry into whether the circumstances were in fact "special" and justified an exception to the general rule that silence is not fraudulent.
Restatement (Second) of Torts § 551 cmt. m (1977) aptly characterizes the proper interplay of judge and jury in the duty analysis:
"Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court. *840 If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty."
On first glance, this section might seem to support the view that the jury can determine the duty question in certain circumstances, i.e., where the facts are disputed. But a careful reading reveals that the jury is allowed to determine only the disputed facts upon which the alleged duty rests, not the existence of the duty itself. The effect of this comment is summarized in Jones Distributing Co. v. White Consolidated Industries, Inc., 943 F.Supp. 1445, 1474 (N.D.Iowa 1996):
"Thus, the court must decide in the first instance whether the circumstances asserted, if proved, would be sufficient to give rise to a duty to disclose; if the court finds the circumstances alleged would be sufficient, the jury will then be presented with the factual question of whether those circumstances indeed existed, provided of course, at the summary judgment stage of the proceedings, the plaintiff can generate a genuine issue of material fact as to the existence of those circumstances."
We think that the proper duty analysis should preserve the respective functions of both the judge and the jury. The judge should decide whether, assuming as truth all of the plaintiffs factual assertions, they are sufficient to give rise to a legal duty. If, even presuming that all of the plaintiffs facts are true, the judge determines that, as a matter of law, no duty was owed, then a summary judgment or a directed verdict is appropriate. If the judge finds that the circumstances as alleged would be enough to create a legal duty, then he should instruct the jury as to what that duty would be if these circumstances did exist. The jury then decides whether those circumstances indeed existed. Should the plaintiff fail to prove her facts to the jury's satisfaction, then the jury can determine that the plaintiff did not present sufficient evidence to justify holding the defendant to the legal duty as charged by the judge. By this process, the judge retains his ability to state what the law is, while the jury retains its responsibility to state what the facts are and whether the facts as proven justify the finding of a duty under the law.[3]
We note that a number of other jurisdictions accept this principle that the question of the existence of a duty to disclose is for the court to decide as a matter of law. A. T. Kearney, Inc. v. International Bus. Machines Corp., 73 F.3d 238 (9th Cir.1995) (citing Oregon law that the question of a duty of disclosure is a question of law); Lakeland Tool & Eng'g, Inc. v. Thermo-Serv, Inc., 916 F.2d 476 (8th Cir.1990) (construing Minnesota law that the question of a duty of disclosure is a question of law); Lefebvre Intergraphics, Inc. v. Sanden Mach., Ltd., 946 F.Supp. 1358 (N.D.Ill.1996); Jones Distrib. Co. v. White Consol. Industries, Inc., 943 F.Supp. 1445 (N.D.Iowa 1996); United Jersey Bank v. Kensey, 306 N.J.Super. 540, 704 A.2d 38 (1997); Mattingly v. First Bank of Lincoln, 285 Mont. 209, 947 P.2d 66 (1997); Mallon Oil Co. v. Bowen/Edwards Associates, Inc., 940 P.2d 1055 (Col.App.1996); First Sec. Bank of Utah, N.A. v. Banberry Dev. Corp., 786 P.2d 1326 (Utah 1990); R.A. *841 Peck, Inc. v. Liberty Fed. Savings Bank, 108 N.M. 84, 766 P.2d 928 (N.M..App.1988); Ollerman v. O'Rourke Co., Inc., 94 Wis.2d 17, 288 N.W.2d 95 (1980); but cf. James v. Crosthwait, 97 Ga. 673, 25 S.E. 754 (1896). An even greater number of jurisdictions apply that principle to tort actions in general.[4] We find these cases to be persuasive authority in the fraud context as well.
In the case at bar, the jury was wrongly allowed to determine whether State Farm owed a duty to Katherine Owen. While in submitting the case to the jury, the trial judge referred to the duty, he did not state that the duty was imposed by law; he was merely summarizing Owen's allegation. He further instructed the jury:
"[T]he burden is on the plaintiff to reasonably satisfy you from the evidence of the truthfulness of each of the following claims: That the defendants were under a duty to disclose.... In determining whether the Defendants were under a duty to disclose, to communicate these facts, you may consider the value of the particular facts involved, the relative knowledge of the parties, inequality of the condition of the parties, the relative bargaining position of the parties, and whether the Defendants had some particular knowledge, means of knowledge or expertise not shared by the Plaintiff."
Thus, he placed the question of a duty wholly within the jury's discretion. The jury should be able to reject the imposition of a duty, but should not be able to create one. Although we now hold that this instruction was incorrect, the trial judge should not be faulted for simply following the precedent given by this Court to be followed in the case where there is disputed evidence from which the particular circumstances of the case must be determined. We are sympathetic to his reluctance to enter a judgment as a matter of law on the suppression claim, especially in light of the language of Alabama Pattern Jury Instruction 18.08, the model for the instruction he gave the jury. But while we understand the trial judge's predicament here, we reach a different conclusion.
Under our interpretation, the trial court must ask himself or herself, "Is there substantial evidence which if accepted by the jury would give rise to a duty to disclose as a matter of law?" If the answer is yes, then the trial court should charge the jury in accordance with the following suggested revision of A.P.J.I. 18.08 (and the accompanying note), which revision we recommend for the Pattern Jury Instruction Committee's consideration:
"SUPPRESSION OF TRUTH DUTY TO DISCLOSE
"The plaintiff contends that the defendant was guilty of a legal fraud because the defendant (concealed) (withheld) material facts from the plaintiff and without knowledge of such material facts the plaintiff acted to his injury. The defendant denies those allegations and, therefore, the burden is upon the plaintiff to reasonably satisfy you from the evidence of the truthfulness of each of the following claims:
"1. That the defendant (concealed) (withheld) material facts from the plaintiff to induce the plaintiff to act; and
"2. That without knowledge of such material facts the plaintiff acted to his injury.

*842 "In determining whether the plaintiff has sustained the foregoing burden, you may consider the value of the particular fact(s) involved, the relative knowledge of the parties, any inequality of the condition of the parties, and whether the defendant has some particular knowledge or expertise not shared by the plaintiff.
"Notes on Use
"To be used only in cases where the existence of the duty to disclose depends on resolution of disputed factual issues and the court has determined, as a question of law, that there is substantial evidence of facts that would, if proven, rise to such duty. See Comment m. to § 551 of the Restatement (Second) of Torts, stating as follows:
"Court and jury. Whether there is a duty to the other to disclose the fact in question is always a matter for the determination of the court. If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty.
Where the relationship of the parties from which a duty to disclose arises is not a jury issue (generally where confidential or fiduciary relations are involved), APJI 18.05 should be given instead of this charge. It would not be appropriate to give both charges in the same case."
By this interpretation, the jury is not deprived of its factfinding role. Yet this interpretation does return to the trial court the powers this Court has transferred away from it. Acting under this Court's decisions, trial judges in Alabama have abdicated their roles as the keepers of the law. The courts' abandonment of this responsibility has not produced more freedom for the jury; it has only produced confusion for the jury, because the jury has not been given guidance as to the applicable law. That is the solemn obligation of the judge. Therefore, with respect to fraud cases, we hereby overrule that line of cases that gives to the jury the responsibility of determining the existence of a duty on the defendant's part.[5]
Having determined that the question of the existence of a duty on the part of State Farm is a question of law, we now consider whether, as a matter of law, a duty of disclosure did arise in this case. Section 6-5-102 sets out two alternatives through which a duty of disclosure may be created. In the first instance, the obligation to communicate could arise from the confidential relations of the parties. Katherine Owen does not contend that her relationship with State Farm was a fiduciary relationship, nor would the evidence in this case support such a finding. See Hardy v. Blue Cross & Blue Shield, 585 So.2d 29 (Ala.1991); King v. National Foundation Life Ins. Co., 541 So.2d 502 (Ala. 1989). Thus, the imposition of a duty of disclosure could have been justified only if this case presented "special circumstances" mandating disclosure.
Turning our attention to the question whether State Farm owed an obligation or duty to Katherine Owen, an obligation or duty that would support her fraudulent-suppression claim, we note that Owen was required to prove that State Farm should have informed her that her premiums would be based on the appraisal value although State Farm would pay no more than the lesser amount of its replacement cost in the event of a loss. In evaluating the question whether State Farm had a duty to speak, we must consider a number of factors: (1) the relationship *843 of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances. Berkel & Co. Contractors, Inc., supra; Restatement (Second) of Torts, supra.
Evaluating these factors and considering the applicable law, we conclude that the evidence presented in this case would not support a finding of any special circumstances justifying the imposition of a duty to disclose. Owen was an educated woman, holding both an undergraduate and a graduate degree. Compare Life Ins. Co. of Georgia v. Johnson, 701 So.2d 524 (Ala.1997). She did not come to the table without any knowledge of insurance practices. Compare Foremost, supra. We recognize the fact that State Farm had superior knowledge of its methods of computing premiums and obtaining replacement items. But in practically any transaction, particularly those involving specialized areas like insurance, one party will have greater knowledge than the other. While that factor should be important, it should not be dispositive. "Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." Surrett v. TIG Premier Ins. Co., 869 F.Supp. 919, 925 (M.D.Ala.1994). Rather, State Farm's superior knowledge as to its procedures and practices should be balanced with other considerations. One of those other considerations is the other party's opportunity to ascertain the fact. There was no evidence that Owen inquired into State Farm's ratemaking procedures or its replacement services. Indeed, she could not recall having read her application and apparently did not read her policy until litigation began. In the absence of an inquiry, we cannot say that she had no opportunity to learn about how her premium would be computed.
Most important, Owen's application clearly stated that in the event of a loss State Farm had the option to repair or to replace Owen's ring and that it would pay no more than its replacement cost. Even though State Farm required the applicant to submit either a bill of sale or an appraisal form, the application never used the words "appraisal value." We find the language of the application to be clear and to be sufficient to alert Owen that in the event of a loss her options under the policy would be limited to receiving a replacement item or receiving its replacement cost, and that State Farm would not consider the appraisal value. State Farm should not be held responsible for Owen's confusion, when the contract language was clear. Considering these factors, we conclude that Owen did not produce sufficient evidence to support a finding of "special circumstances" justifying the imposition of a duty of disclosure.
To uphold Owen's claim, we would have to rule that it is the responsibility of every insurer at the point of sale to explain fully to potential customers the insurer's internal procedures, its ratemaking process, and its business practices. To impose that responsibility strikes us as highly impractical, and it is a responsibility we have not imposed in the past. Ex parte Ford Motor Credit Co., 717 So.2d 781 (Ala.1997); Hardy, supra; King, supra. Furthermore, requiring such an explanation could subject an insurer to double liability by encouraging persons to underinsure their interests. Therefore, we conclude that Owen did not demonstrate any special circumstances on which a court could hold that State Farm was obligated to explain to her its internal practices and procedures.
As a matter of law, State Farm owed Owen no duty of disclosure. Finding that the basic element of fraudulent suppression did not exist, we need not consider the remaining elements of Owen's claim or address the damages issues that State Farm presents. We therefore reverse the trial court's judgment for the plaintiff Owen and render a judgment for the defendant State Farm.
REVERSED AND JUDGMENT RENDERED.
MADDOX, HOUSTON, SEE, and LYONS, JJ., concur.
SHORES, J., concurs in the result.
ALMON, J., dissents.
*844 SHORES, Justice (concurring in the result).
The majority holds that whether a duty to disclose a material fact exists in a fraudulent suppression case is a question of law that is always to be decided by the court, subject to the jury's determination of the disputed underlying facts of the case. I agree that the jury's role encompasses the resolution of disputed facts upon which a duty to disclose would rest. I also recognize that there are cases in which the evidence would lead to only one reasonable conclusion as to the existence of a duty to disclose, and that such cases should not be submitted to the jury for it to determine whether a duty existed. However, I cannot agree that the issue whether a duty to disclose exists should never, under any circumstances, be decided by the jury.
Jim Short Ford Sales, Inc. v. Washington, 384 So.2d 83 (Ala.1980), may have enlarged the jury's role in deciding fraudulent suppression cases, but it was not a revolutionary departure from existing law in Alabama, as the majority suggests. Indeed, most of the pre-1980 cases cited by the majority for support of the proposition that the existence of a duty has always been a question of law for the court in Alabama involve claims of negligence, not fraudulent suppression. See Hand v. Butts, 289 Ala. 653, 270 So.2d 789 (1972); Gilbert v. Gwin-McCollum Funeral Home, Inc., 268 Ala. 372, 106 So.2d 646 (1958); Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305 (1945); see also Sungas, Inc. v. Perry, 450 So.2d 1085 (Ala.1984).
The same is true of the majority's quotations from, and references to, various learned legal treatises, as they discuss the court's role in determining the existence of a duty within the context of a negligence action. The majority says that Alabama courts had always adhered to the "fundamental principle" that the question whether a duty to disclose exists is never for the jury. The only fraud cases cited by the majority to support that statement are two decisions from the 1840s, and neither supports in an unequivocal manner the rigid position taken by the majority. In one of these cited cases, Juzan v. Toulmin, 9 Ala. 662, 686 (1846), the Court found as a matter of law that no fraudulent suppression occurred so as to void a conveyance of land, because it could not be inferred that the defendant "had any information in respect to the title to the land, of which [the plaintiffs] were not fully in possession." Thus, as a fraud case, Juzan simply demonstrates the uncontroversial principle that a defendant cannot be said to have "suppressed" a material fact of which the plaintiff is already aware. The second case cited by the majority, Van Arsdale & Co. v. Howard, 5 Ala. 596, 602 (1843), merely held that there was simply insufficient "evidence of some trust, or confidence, reposed by one party in the other," which is one of the situations in which a duty to disclose material facts arises under § 6-5-102, Ala.Code 1975 ("The obligation to communicate [a material fact] may arise from the confidential relations of the parties ..."). Further, these two cases were decided when courts more closely adhered to the principle of caveat emptor and the law did not require disclosure of material facts in many transactions. See Nicola Palmieri, Good Faith Disclosures During Precontractual Negotiations, 24 Seton Hall L.Rev. 70, 109-20 (1993). Thus, at that time a court might more readily have concluded, as a matter of law, that the evidence in a case could only counsel a reasonable finding that no duty to disclose existed.
Whether, in a fraud case, there existed a duty to disclose depends primarily upon whether an ordinary, reasonable person would have expected, under all the circumstances of the case, disclosure of the given material fact, and, conversely, would have disclosed the material fact in that situation. This is essentially the position advocated by Professor W. Page Keeton in his 1936 article for the Texas Law Review, Concealment and Nondisclosure, wherein he stated:
"The attitude of the courts toward nondisclosure is undergoing a change and ... it would seem that the object of the law in these cases should be to impose on parties to the transaction a duty to speak whenever justice, equity, and fair dealing demand it.... The question is one of fair conduct, just as negligence is a question of fair conduct. Since, therefore, the question is *845 of that nature it would be impossible, it is believed, to arrive at a precept which could be used with mathematical exactness to dispose of all the situations that might arise. We can only hope to apply some standard which will give a measure of certainty, and, at the same time, a measure of justice.... In this connection it would seem that the conception of negligence as the care of the ordinary prudent man would be of benefit. It has been said that the standard man in his conduct on the question of negligence evaluates interests in accordance with the sentiment of the community. Why not employ the standard man in this connection? This would be, not the ordinary man's views as to the ethical quality of the silence, but what the man of ordinary moral sensibilities would have done; would he have disclosed the information or would he have remained silent? ... Society requires or should require of a person a judgment on moral questions which represents the sentiment of the community, and the fictitious standard man is set up with that judgment."
15 Tex. L.Rev. 1, 31-33. Accordingly, because I disagree with the majority's blanket rule against the jury's ever making the determination, in a fraudulent suppression case, whether a duty to disclose existed, I concur in the result only.
NOTES
[1] See Van Arsdale & Co. v. Howard, 5 Ala. 596 (1843) (holding it was error to submit a fraud claim to the jury, partly because there was no principle of law establishing an obligation of disclosure); Juzan v. Toulmin, 9 Ala. 662 (1846) (the obligation to communicate must arise from law or equity).
[2] Although these are negligence cases, we find their rationale to apply equally to the question of duty in a fraud case.
[3] This approach is analogous to the analysis used to determine the other statutory basis creating a duty to disclose, the confidential relationship of the parties. Where there are no disputed issues of fact as to the existence of a confidential relationship, the question of law as to the duty to disclose is well settled. See, e.g., Hughes v. Hertz Corp., 670 So.2d 882 (Ala.1995). Factual disputes in such cases relate to the issues of concealment and reliance. See Alabama Pattern Jury Instructions: Civil, number 18.05 (2d ed.1993). The more difficult decision is whether, as a matter of law, certain facts, if proven, give rise to a confidential relationship. In such cases, the resolution of underlying factual issues that go into a determination of the question of the existence of a duty to speak is for the jury, but the court must retain the ultimate authority over determining whether the facts, even if proven, warrant the conclusion that a duty existed. Then, only if the court holds that a duty exists if certain facts are proven, the jury also must determine whether the evidence shows that there was concealment by the defendant and reliance by the plaintiff.
[4] Mitchell v. Archibald & Kendall, Inc., 573 F.2d 429 (7th Cir.1978) (applying Illinois law); Tenuto v. Lederle Laboratories, 90 N.Y.2d 606, 665 N.Y.S.2d 17, 687 N.E.2d 1300 (1997); Mundy v. Department of Health & Human Resources, 620 So.2d 811 (La.1993); St. Francis Med. Center v. Superior Court, 194 Cal.App.3d 668, 239 Cal. Rptr. 765 (1987); Hayes v. Nagata, 68 Haw. 662, 730 P.2d 914 (1986); Metropolitan Gas Repair Service, Inc. v. Kulik, 621 P.2d 313 (Colo.1980); Stabnick v. Williams Patrol Service, 151 Mich. App. 331, 390 N.W.2d 657 (1986); Bernethy v. Walt Failor's, Inc., 97 Wash.2d 929, 653 P.2d 280 (1982); DeLair v. LaMoure County, 326 N.W.2d 55 (N.D.1982); Dubus v. Dresser Indus., 649 P.2d 198 (Wyo.1982); Soike v. Evan Matthews & Co., 302 N.W.2d 841 (Iowa 1981); Mc-Donald v. Title Ins. Co. of Oregon, 49 Or.App. 1055, 621 P.2d 654 (1980); Producers Grain Corp. v. Lindsay, 603 S.W.2d 326 (Tex.Civ.App. 1980); Dill v. Gamble Asphalt Materials, 594 S.W.2d 719 (Tenn.App.1979); Miller v. Griesel, 261 Ind. 604, 308 N.E.2d 701 (1974); Southern Union Gas Co. v. Briner Rust Proofing Co., 65 N.M. 32, 331 P.2d 531 (1958).
[5] We note that one of the cases cited by the plaintiff follows a line of precedent in the negligence/personal injury arena that suffers from the same flawtreating the existence of a duty as a jury question. Whataburger, supra, at 1225, citing Garner v. Covington County, 624 So.2d 1346 (Ala.1993), and Jones v. Blount County, 681 So.2d 202 (Ala.Civ.App.1995). However, because this is a fraudulent suppression case, those cases are not properly before us, and we make no determination at this time as to their validity.