Willadean Walden appeals from two summary judgments entered in favor of the Smith Children Trust; Annee Caspari, as trustee of the Smith Children Trust; and Hugh V. Smith, Jr., father of the Smith children (these three parties will hereinafter be referred to as "the Smith Children Trust"). We affirm in part, reverse in part, and remand.
When this action began, Walden, a high-school graduate, was an 83-year-old widow. Hugh Smith, a lawyer, was her business associate. On January 24, 1991, Walden lent Smith $50,000. To secure the debt, property held by the Smith Children Trust was transferred to Walden by warranty deed. This property consisted of a one-half interest in an office building in Montgomery, Alabama, and a condominium in Destin, Florida. Walden recorded the deed to the Alabama property, but she did not record the deed to the Florida property. After Smith defaulted on the loan in 1993, Walden conducted a title search on the Florida property; the search showed two mortgages, tax liens, condominium liens, and other claims and charges against the property.[1] Fearing that there was no equity in the property, Walden confronted Smith and demanded that he provide her with other collateral. Smith gave Walden a written promise to pay her $50,000 when he sold an apartment building located in Prattville, Alabama.[2] Twelve days later, Smith sold the Florida condominium.[3] He netted approximately $28,000 from the sale.
Smith testified by deposition that he informed Walden that the title search on the Florida property was wrong and that there was, in fact, equity in the property; he alleges that she was too hysterical to listen to him and insisted that he provide her with substitute collateral. Smith admits that he did not tell Walden, when she confronted him, that he had listed the condominium with a real-estate broker and that a sale was pending. Walden stated that Smith never told her that the title *Page 337 
search was in error or that he had a buyer for the property.
On May 10, 1995, the Smith Children Trust sued Walden, seeking a judgment declaring the ownership rights as to the office building in Montgomery. Walden responded with an answer and a counterclaim, alleging, among other things, (1) default on a promissory note; (2) breach of an agreement; (3) fraud in the inducement; (4) fraudulent suppression; and (5) conspiracy to defraud. On April 16, 1997, the trial court entered a partial summary judgment in favor of the Smith Children Trust on Walden's claim alleging conspiracy to defraud. The trial court, pursuant to a pretrial order, allowed Walden to proceed on her other four claims. On May 13, 1997, Walden filed a motion to vacate the partial summary judgment; the court denied that motion.
Walden appealed to this Court, which transferred the case to the Court of Civil Appeals, pursuant to Ala. Code 1975, § 12-2-7; however, the Court of Civil Appeals, on December 22, 1997, without an opinion, dismissed Walden's appeal on the basis that it was not from a final judgment. Walden v. Smith Children Trust, 736 So.2d 696 (Ala.Civ.App. 1997) (table). The Court of Civil Appeals dismissed the appeal apparently because the trial judge, when he made the Rule 54(b) certification of finality, had not complied with the additional requirements imposed by the Court of Civil Appeals in Brown v. WhitakerContracting Corp., 681 So.2d 226 (Ala.Civ.App. 1996) (now overruled bySchneider Nat'l Carriers, Inc. v. Tinney, 776 So.2d 753
(Ala. 2000)). Upon Walden's motion to reconsider, the Court of Civil Appeals reinstated her appeal, on January 13, 1998. Walden v. SmithChildren Trust, 738 So.2d 924 (Ala.Civ.App. 1998) (table). On April 3, 1998, the Court of Civil Appeals remanded the case to allow the trial court, if it considered it appropriate to do so, to enter a Rule 54(b) certification complying with Brown. Walden v. Smith Children Trust,716 So.2d 705 (Ala.Civ.App. 1998). On April 17, 1998, the trial court entered an order setting aside its earlier Rule 54(b) certification; the Court of Civil Appeals, without opinion, dismissed the appeal on April 22, 1998, as not from a final judgment. Walden v. Smith Children Trust,740 So.2d 492 (Ala.Civ.App. 1998) (table).
During a two-year period beginning in 1997, Walden filed numerous motions for leave to amend her counterclaim, re-alleging conspiracy to defraud, as well as stating additional claims alleging "false pretenses" and breach of lease. On October 19, 1998, the trial court entered judgments against Hugh Smith on Walden's breach-of-contract and promissory-note claims. Walden moved for a clarification or modification of a pretrial order entered on October 19, 1998. On January 19, 1999, the trial court entered an order denying Walden's motion to amend her counterclaim, entered a judgment in favor of the Smith Children Trust on Walden's claims alleging fraud and fraudulent suppression, and declared all other pending motions moot.
Walden appealed to the Court of Civil Appeals, arguing that the trial court had erred in entering the summary judgments in favor of the Smith Children Trust on her claims alleging conspiracy to defraud and fraudulent suppression. The Court of Civil Appeals, on August 6, 1999, affirmed, without an opinion. Walden v. Smith Children Trust (No. 2980747), 781 So.2d 1029 (Ala.Civ.App. 1999) (table). In its unpublished memorandum of affirmance, the Court of Civil Appeals cited several cases standing for the proposition that mere silence does not constitute fraud, absent a duty to disclose, and that one has no duty to disclose facts to another if the other has not specifically requested information. *Page 338 
See Cato v. Lowder Realty Co., 630 So.2d 378 (Ala. 1993), andHintzel v. Chubb Life Ins. Co. of America, 678 So.2d 1140
(Ala.Civ.App. 1996).
Our review of a summary judgment is de novo:
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law,' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Gulthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
Walden argues, in regard to her fraudulent-suppression claim, that Hugh Smith had a duty to inform her that the findings of the title search on the Florida property were incorrect and that he suppressed this information from her. Walden argues that because she presented Smith with the results of the title search, she invited a response from him. Moreover, Walden argues that because she held a warranty deed to the condominium, Smith had a duty to inform her of the pending sale of the property.
In order to establish a claim of fraudulent suppression, a plaintiff must produce substantial evidence indicating (1) that the defendant had a duty to disclose a material fact; (2) that the defendant concealed or failed to disclose this material fact; (3) that the defendant's concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result of being induced to act or to refrain from acting. State Farm Fire Cas. Co. v. Owens, 729 So.2d 834
(Ala. 1999). Section 6-5-102, Ala. Code 1975, establishes two situations in which a duty to speak can arise: "from the confidential relations of the parties or from the particular circumstances of the case." Furthermore, a duty to disclose may arise from a request for information; however, mere silence in the absence of a duty to disclose is not fraudulent. Jewell v. Seaboard Indus., Inc., 667 So.2d 653 (Ala. 1995).
Whether one had a duty to disclose is a question of law to be decided by the trial court. State Farm Fire Cas. Co. v. Owens, 729 So.2d 834
(Ala. 1999)
 "The judge should decide whether, assuming as truth all of the plaintiff's factual assertions, they are sufficient to give rise to a legal duty. If even presuming that all of the plaintiff's facts are true, the judge determines that, as a matter of law, no duty was owed, then a *Page 339 
summary judgment or a directed verdict is appropriate."
Owens, 729 So.2d at 840. Factors a court is to consider in determining whether a defendant had a duty to disclose include: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact alleged to have been suppressed; (4) the plaintiff's opportunity to ascertain that fact; (5) the customs of the particular trade; and (6) other relevant circumstances. Id.
Hugh Smith, a lawyer who had been in a joint venture with Walden for a number of years, borrowed $50,000 from Walden. Smith conveyed a condominium in Florida to Walden to secure this indebtedness. When Smith's loan became delinquent, Walden had a title search performed on the condominium; the title search revealed various claims against the property, including two unsatisfied mortgages, which, if valid, would have meant there was no equity in the property. Walden confronted Smith, informed him of what the title search had revealed, and demanded substitute collateral. The facts are disputed as to whether Smith informed Walden that one of the mortgages had been paid in full and that the title search was incorrect. However, the undisputed facts establish that Smith remained silent, knowing that Walden had not recorded her deed to the Florida condominium and that he had a sales contract pending on the condominium, a contract that would net him approximately $28,000 after all liens and expenses were paid.
After examining the applicable law and the facts of this case, we conclude that the trial court erred in entering the summary judgment in favor of the Smith Children Trust on Walden's claim alleging fraudulent suppression.
As to her conspiracy claim, Walden contends that Caspari and Hugh Smith conspired to establish and maintain sham trusts in order to hinder, delay, or defraud Smith's creditors. The record indicates that Walden failed to present substantial evidence creating a genuine issue of material fact as to this claim. Accordingly, the trial court properly entered the summary judgment for the Smith Children Trust on Walden's conspiracy claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
[1] The title search revealed two mortgages on the property, one securing a debt of $80,000 and the other securing a debt of approximately $84,000. According to Smith, the first mortgage was satisfied by funds derived from the second mortgage.
[2] The handwritten document signed by Smith and given to Walden states:
 "I hereby assign to Willadean Walden $50,000 in the proceeds from the sale of Danya Park Apartments, Prattville, Alabama, sale to be consummated within the next 24 months or (?) whichever is sooner.
 "This collateral takes the place of collateral earlier granted to W. Walden at Sandpiper Cove, Destin, Fla."
Smith has not sold the apartment complex, and, because of pending federal litigation, the complex cannot be listed on the market.
[3] It appears that Smith had put the Florida property on the market and had had a sales contract pending when Walden confronted him.