12 So.3d 662 (2008)
STATE FARM FIRE AND CASUALTY COMPANY, Sally Hines, and B.G. Hines
v.
WONDERFUL COUNSELOR APOSTOLIC FAITH CHURCH.
1050872.
Supreme Court of Alabama.
December 31, 2008.
Micheal S. Jackson, Michael B. Beers, Constance T. Buckalew, and Angela C. Taylor of Beers, Anderson, Jackson, Patty, Van Heest & Fawal, P.C., Montgomery, for appellants.
Stephen D. Heninger and Brian D. Hancock of Heninger Garrison Davis, LLC, Birmingham, for appellee.

On Application for Rehearing.
PER CURIAM.
APPLICATION OVERRULED. NO OPINION.
*663 COBB, C.J., and SEE, LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
SMITH, J., concurs specially.
MURDOCK, J., dissents.
SMITH, Justice (concurring specially).
State Farm Fire and Casualty Company ("State Farm"), Sally Hines, and B.G. Hines (hereinafter referred to collectively as "the defendants") appealed from a judgment entered on a jury verdict in favor of the plaintiff below, Wonderful Counselor Apostolic Faith Church ("WCAFC"),[1] in this action seeking damages for suppression and breach of contract. On May 23, 2008, this Court affirmed the judgment of the trial court without an opinion. Subsequently, the defendants filed an application for rehearing. I concur to overrule their application, and I write to express why I do so.
In 1989, WCAFC began constructing a new church building. Bennie Sue Morgan, the pastor of WCAFC, contacted Sally Hines, a State Farm agent, to obtain a quote for insurance coverage for the new church building. Sally's husband, B.G. Hines, was employed by Sally in her office and provided Morgan with a quote for the insurance. Both Sally and B.G. testified that Morgan requested an insurance limit of $100,000. Morgan completed an application, which requested a policy on the church building with "replacement cost coverage" and a policy limit of $100,000.
The insurance policy was issued February 18, 1990. The policy limited the amount payable for a loss to the church building at $100,000. The declarations page of the policy specified this limit and referred to it as the "limits of insurance." Every year at renewal the "limits of insurance" amount was increased, purportedly to account for inflation. The policy at issue in this case, which was renewed on January 12, 2000, set the "limits of insurance" amount for the church building at $127,500.
In addition to the increase in the "limits of insurance" amount at the policy renewal every year, the policy also contained a provision to increase the "limits of insurance" amount throughout the year the policy is in place. This provision is titled "Inflation Coverage."
On August 2, 2000, the church building was destroyed by fire. WCAFC obtained two estimates to rebuild the church building  both estimates exceeded $200,000. Using the inflation-coverage provision, State Farm calculated that under the "limits of insurance" at the date of the loss the payment under the policy for the church building was $129,795.
WCAFC and Morgan subsequently, sued State Farm, Sally Hines, and B.G. Hines seeking damages for, among other things, breach of contract, suppression, negligent failure to procure insurance, and various theories of fraud.
The jury returned a verdict finding that Sally and B.G. were agents of State Farm and found in favor of all three defendants on the counts of fraud and negligent failure to procure insurance. As to the breach-of-contract count, the jury found in favor of WCAFC and against State Farm. As to the suppression count, the jury found in favor of WCAFC and against all defendants. The trial court ultimately entered a judgment in favor of WCAFC in the amount of $90,000 in compensatory damages against all defendants; $300,000 *664 in punitive damages against State Farm; $25,000 in punitive damages against Sally; and $25,000 in punitive damages against B.G. The defendants appealed, and this Court affirmed the trial court's judgment without an opinion. The defendants now apply for a rehearing.
In their application for rehearing, the defendants raise four issues. First, the defendants claim that the punitive-damages award against them was excessive and that it was wrongly apportioned between the parties. In their brief supporting the application for rehearing, the defendants state:
"In the initial Brief of [the defendants], logical exposition demanded that other issues be discussed before this issue. Therefore, the issue was not addressed until after page 70 and perhaps this Court was worn out before it reached this issue and did not grasp the significance of the trial court's error."
However, no authority was cited in the discussion in the original brief on this issue; therefore, the judgment of the trial court was due to be affirmed on this ground. See Rule 28(a)(10), Ala. R.App. P. (requiring that an appellate brief provide "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on" (emphasis added)); City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998) ("When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research.").
In their second issue, the defendants claim that WCAFC failed to present any evidence to satisfy the requirements of Ala.Code 1975, § 6-11-27, for holding a principal vicariously liable for punitive damages. However, I believe that the record demonstrated that WCAFC submitted substantial evidence on this issue.[2]
The defendants also argue on rehearing that the trial court erred in ruling that State Farm had a duty to disclose to WCAFC its "internal operating procedure" by which it estimated the replacement cost of the church building. In support of this argument, State Farm, in its original brief, cited, without explanation, State Farm Fire & Casualty Co. v. Owen, 729 So.2d 834 (Ala.1998). Owen sets forth an analysis, which can include numerous factual considerations, to determine, in an action alleging suppression, whether an insurer had a duty to speak.[3]Under the facts of that case, this Court held that the insurer had no duty to disclose certain underwriting procedures. Owen, however, does not establish a per se rule barring the admission of internal underwriting procedures.
*665 The defendants in their original brief in this case did not address the factors found in Owen; instead, they cited Owen for the proposition that "State Farm had no duty to disclose its internal operating procedure to [WCAFC]." Again, Owen did not establish a per se rule; without any explanation as to why Owen forbade the admission of the procedures into evidence or why there was no duty to disclose the estimated replacement amount, the defendants did not meet their burden in establishing that the trial court erred to reversal.
Finally, the defendants state: "This Honorable Court left undisturbed and unaddressed the trial court's ruling, as a matter of law, that the Inflation Coverage contained in State Farm's church policy was ambiguous." State Farm contends that its policy was not ambiguous and that the trial court erred in holding otherwise. I agree. However, as explained below, this error does not alter the result in this case or require a reversal.
At trial, the trial court determined that the inflation-coverage provision of the policy was ambiguous. This ruling formed the basis of the breach-of-contract claim that was submitted to the jury.
"Whether a provision of an insurance policy is ambiguous is a question of law. Turvin v. Alfa Mut. Gen. Ins. Co., 774 So.2d 597, 599 (Ala.Civ.App.2000). To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company. Twin City Fire Ins. Co. [v. Alfa Mut. Ins. Co.], 817 So.2d [687,] 692 [ (Ala.2001) ]. However, the parties cannot create ambiguities by setting forth different interpretations or `[by inserting] ... strained or twisted reasoning.' Id. Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. Id. If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. Id."
Safeway Ins. Co. of Alabama v. Herrera, 912 So.2d 1140, 1143 (Ala.2005).
"A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." Lambert v. Coregis Ins. Co., 950 So.2d 1156, 1162 (Ala.2006). Additionally, in determining whether an insurance policy is ambiguous, "a court cannot consider the language in the policy in isolation, but must consider the policy as a whole." State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 309 (Ala.1999); see also Allstate Ins. Co. v. Hardnett, 763 So.2d 963, 965 (Ala.2000) ("An insurance policy must be read as a whole. The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions.").
Because the issue whether a contract is ambiguous is a question of law, a de novo determination as to whether the inflation-coverage provision is ambiguous is required. See State Farm Fire & Cas. Co. v. Slade, 747 So.2d at 308.
The inflation-coverage provision states, in pertinent part:
"The limits of insurance specified in the Declarations of this policy for Coverage A-Buildings and Coverage B-Business Personal Property will automatically increase by the applicable Inflation Coverage Index shown in the Declarations.
"To determine the limits of insurance on a particular date, the Index level *666 available on that date will be divided by the Index level as of the effective date of this inflation coverage provision and the resulting factor multiplied by the limits of insurance for Coverage A and Coverage B separately. In no event will the limits of insurance be reduced to less than those shown in the Declarations or most recent renewal notice, whichever is greater."
As noted above, the declarations page for the policy issued January 12, 2000, specifies the "limits of insurance" for "Buildings" at $127,500. The inflation-coverage index is specified on that page as "141.2." According to State Farm, the "index level available" on the date of the loss  August 2, 2000  was "143.8."
After WCAFC rested its case, the trial court ruled that the first paragraph of the provision was ambiguous:
"The Court also feels obligated to find that there is an ambiguity in the policy. The ambiguity the Court finds is in paragraph one, inflation coverage.... [I]t is clear to the Court ... that the limits of insurance will automatically increase by the applicable inflation coverage index shown in the declaration. The policy being a replacement cost coverage policy on its face and in its application tends to beg: Well, what is the purpose of that? In the Court's mind, it creates confusion and, therefore, I interpreted it against the drafter and against State Farm in this case, and the Court would find it creates in the mind of the layperson or could very likely create, as it did with the Court, that you have to increase your coverage by that multiple factor on the front page. It could have just as easily been handled by looking to the second paragraph and, to me, would have been sufficient in and of itself to handle any adjustment at the point in time of loss."
As stated above, in interpreting the inflation-coverage provision, this Court must not read any part of the language of the inflation-coverage provision, including the first paragraph, "in isolation." Slade, 747 So.2d at 309. Instead, this Court must read the policy "as a whole" and the language of the inflation-coverage provision must be "read in context with all other provisions." Hardnett, 763 So.2d at 965. See also Royal Ins. Co. of America v. Thomas, 879 So.2d 1144, 1153-54 (Ala. 2003) ("`Insurance contracts, like other contracts, are construed to give effect to the intention of the parties and, to determine this intent, the court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions. State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863 (Ala. 1987).'" (quoting Hall v. American Indem. Group, 648 So.2d 556, 559 (Ala.1994))).
The first paragraph of the inflation-coverage provision states generally that the policy "limits of insurance" automatically increase "by the applicable Inflation Coverage Index." The second paragraph explains how this calculation is made: "To determine the limits of insurance on a particular date [`the adjusted limit'], the Index level available on that date [`A'] will be divided by the Index level as of the effective date of this inflation coverage provision [`B'] and the resulting factor multiplied by the limits of insurance [`C']...." (Emphasis added.) This can be expressed in the following equation: A ÷ B × C = "the adjusted limit."
The index level available on the date of the loss, 143.8, is divided by the "Index level as of the effective date of this inflation coverage provision," which was 141.2. The resulting quotient ("the resulting factor")[4] *667 is then "multiplied by the limits of insurance," $127,500, resulting in the adjusted limit: 143.8 ÷ 141.2 × $127,500 = $129,795. This result is the same "adjusted limit" State Farm calculated under the inflation-coverage provision and paid WCAFC for the loss of the church building.[5]
WCAFC's interpretation of the inflation-coverage provision, however, is quite different. WCAFC stated in its brief:
"However, the more reasonable interpretation of the inflation coverage provision is that the limits of insurance as specified on the current declarations page, or $127,500 for 2000, are automatically increased by the Inflation Coverage Index of 141.2. Because it is an inflation index, it is `obvious,' as conceded by State Farm's corporate representative, John Hill, that 141.2 represents a percentage and must be divided by 100 before the limits are increased through multiplication. (R. 997). It is more than reasonable, therefore, that paragraph one automatically increases the `limits of insurance' to $180,030. Paragraph two then provides a minor adjustment to the `limits of insurance' as previously figured in paragraph one by dividing the index level on the date of loss, 143.8, by the inflation coverage index on the declarations page, 141.2, and then multiplying the result by $180,030."
WCAFC's brief at 26 n.3.
This is not a reasonable interpretation of the inflation-coverage provision. First, WCAFC reads the first paragraph in isolation, ignoring the second paragraph, the opening phrase of which explains how "[t]o determine the limits of insurance on a particular date." Attempting to determine the adjusted limit using the plain text of the first paragraph alone requires one to "increase" the "limits of insurance" by the "applicable Inflation Coverage Index." Thus the $127,500 "limits of insurance" would be "increased" by 141.2, which if multiplied results in the incredible adjusted limit of $18,003,000  a facially unreasonable adjustment for only eight months of inflation.
WCAFC suggests, however, that the "applicable Inflation Coverage Index" is actually a percentage, and that the $127,500 "limits of insurance" would be "increased" by 141.2%. To perform this calculation, WCAFC reads the text of the inflation-coverage provision to require that 141.2 be divided by 100, then multiplies the resulting quotient by the policy limit, resulting in an adjusted limit of $180,030. WCAFC's interpretation requires that the inflation-coverage index be read as a percentage, that this figure be divided by 100, and that the resulting quotient then be multiplied by the policy limit  none of which is actually specified in that paragraph.
The second paragraph, WCAFC suggests, makes a "minor adjustment" to the "limits of insurance" calculated in the first paragraph. To do this, the index level on the date of loss, 143.8, is divided by the inflation-coverage index, 141.2, and then multiplied by the previously determined adjusted limit to come to the final total limit: 143.8 ÷ 141.2 × $180,030 = $183,-345.[6]
*668 WCAFC's interpretation requires that a term in the first paragraph  "limits of insurance"  have a different meaning in the second paragraph. Specifically, in the first paragraph, the term "limits of insurance" refers to the policy limit of $127,500, which is "specified in the Declarations" of the policy. The inflation-coverage provision modifies this amount to reach the adjusted limit, which is the "limits of insurance on a particular date." Under the defendants' interpretation of the inflation-coverage provision, the term "limits of insurance" always refers to the $127,500 amount. WCAFC's interpretation, however, requires "limits of insurance" in the first paragraph to refer to the $127,500 limit, but in the second paragraph to refer to the new "limits of insurance" as modified by the first paragraph.
WCAFC's reading of the inflation-coverage provision is unreasonable; it fails to read the provision in the context of the entire policy, thus giving new meaning  or no meaning  to terms in second paragraph. Additionally, WCAFC's reading changes the value and meaning of terms in the first paragraph, but not the second paragraph, and adds calculations and unit conversions not actually required. WCAFC's argument is without merit, and I see no ambiguity in the inflation-coverage provision.
The court "must enforce the insurance policy as written if the terms are unambiguous...." Safeway Ins. Co. of Alabama v. Herrera, 912 So.2d at 1143. The trial court erred in determining that the inflation-coverage provision was ambiguous and in submitting the breach-of-contract claim to the jury on that basis. It is undisputed that State Farm paid WCAFC the amount required by the unambiguous text of the insurance policy; thus, State Farm is due a judgment in its favor on this count.
However, it appears to me that the fact that the breach-of-contract claim should not have been submitted to the jury would not make a difference in the judgment award in this case. Because the defendants have not demonstrated that the trial court erred in denying their motion for a judgment as a matter of law or in entering a judgment on the suppression claim, that particular judgment is due to be affirmed. This raises a troubling issue. The jury rendered two different compensatory-damages awards: $90,000 on the breach-of-contract claim against State Farm, and $90,000 on the suppression claim against all three defendants. The trial court, however, in an apparent attempt to avoid a double recovery, entered a single $90,000 compensatory-damages award against all three defendants.
If, as I believe, the breach-of-contract claim is due to be reversed but the suppression claim is due to be affirmed, to what extent should the $90,000 compensatory-damages award remain standing? The verdict in this case was not a general verdict. There is no dispute that the jury found against State Farm on the breach-of-contract claim and awarded $90,000. There is no dispute that the jury found in favor of WCAFC on the suppression claim and awarded $90,000 in compensatory-damages against all three defendants[7] and $350,000 in punitive damages. Removing the $90,000 compensatory-damages judgment on the breach-of-contract claim *669 leaves the same monetary judgment against all three defendants: $440,000.
Neither party addresses this issue or presents authority demonstrating what this Court should do in this situation. It is not the duty of this Court to seek out authority or to formulate legal rationales in an attempt to reverse a trial court's decision based on a jury's verdict. Instead, it is the appellants' duty to provide a basis for reversing the judgment of the trial court. Because the verdict on the suppression claim would support all the damages awarded in this case, and because the parties do not provide the Court with authority or legal reasoning on which to hold otherwise, I concurred originally to affirm the judgment of the trial court, and I concur in overruling the application for rehearing.
NOTES
[1] WCAFC is also referred to in the record as "Wonderful Council Pentecostal Assembly, Inc., and "Wonderful Counselor Church."
[2] Additionally, the evidence at trial indicated that money "was tight" at WCAFC. The jury could have concluded that the defendants knew that Morgan would not have purchased a more expensive policy, which would have had adequate coverage; thus, Morgan was induced to purchase a less expensive policy because she was not told that the less expensive policy did not provide the level of coverage she requested.
[3] Under Ala.Code 1975, § 6-5-102, an obligation to communicate may arise from the "confidential relations" of the parties or from the particular circumstances of the case. In determining the "particular circumstances of the case," the Court in Owen looked to "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." 729 So.2d at 842-43.
[4] I have rounded the "resulting factor" in this case to the nearest one thousandth: 1.018.
[5] State Farm actually paid WCAFC $144,233, which reflects payment under the policy for coverage for both the church building and the personal property lost in the fire. The amount of coverage for the church building under the policy is the issue on appeal.
[6] WCAFC does not suggest, as it does for the first paragraph, that the second paragraph requires the "inflation-coverage index" to be multiplied by 100 or to be considered a percentage.
[7] Because the parties do not dispute that Sally and B.G. could not be liable for breach of contract, no compensatory-damages award on the breach-of-contract claim was entered against them.