Willadean Walden and Danya Park Garden Apartments, Inc. ("Danya Park"), formerly known as Hugh V. Smith Enterprises, Inc. ("the Enterprises"), appeal from a summary judgment in favor of George Hutchinson; the George Ellis Hutchinson, Jr., Present Interest Trust No. 1 ("the Hutchinson trust"); Annee Caspari, individually and as executrix of the estate of Hugh V. Smith, Jr. ("the estate"); ES Capital, LLC ("ES"); and Richard Ensley and Patricia Ensley, an officer and a member, respectively, of ES, in an action commenced *Page 1111 
by Walden and Danya Park, seeking, among other things, to quiet title in Walden to real estate known as Danya Park Garden Apartments ("the apartments"). We affirm in part, reverse in part, and remand.
 I. Factual Background
The dispositive facts are essentially undisputed. This complicated, long-running dispute arose out of litigation in the Montgomery Circuit Court (CV-95-1093) and has already been before this Court on a number of occasions. See Walden v.Sandlin (No. 1050324, May 12, 2006), 976 So.2d 1059
(Ala. 2006) (table); Ex parte Walden, 916 So.2d 632
(Ala. 2004) (table); Walden v. Smith, 891 So.2d 837
(Ala. 2004); and Ex parte Walden, 785 So.2d 335 (Ala. 2000). At its outset, the litigation involved Walden and the late Hugh V. Smith, Jr., in case no. CV-95-1093, an action filed against Walden by Smith and others. On June 14, 1995, Walden filed counterclaims against Smith alleging, among other things, (1) breach of a promissory note, (2) breach of a joint-venture agreement, and (3) fraudulent suppression.
While case no. CV-95-1093 was pending, Smith, an attorney representing Auburn Medical Center, Inc. ("AMC"), became indebted to Hutchinson in the amount of $310,000 in connection with the construction of a hospital in Auburn. On October 21, 1998, Smith, as president of the Enterprises, gave Hutchinson a quitclaim deed to the apartments. In conjunction with the quitclaim deed, Hutchinson and Smith, individually and as president of the Enterprises, executed agreements purporting to show that Hutchinson was to hold the deed as collateral for Smith's debt to Hutchinson and that the deed was to be recorded only upon Smith's death or in the event he defaulted on the indebtedness.
Subsequently, Walden obtained a favorable judgment for $187,166 in case no. CV-95-1093 on her counterclaims against Smith alleging breach of a promissory note and breach of a joint-venture agreement, but she suffered an adverse summary judgment on her fraudulent-suppression counterclaim. She appealed from the summary judgment, and the Court of Civil Appeals affirmed, without an opinion. Walden v. SmithChildren Trust, 781 So.2d 1029 (Ala.Civ.App. 1999) (table). This Court reversed the judgment of the Court of Civil Appeals and remanded the case for further proceedings on the fraudulent-suppression counterclaim. Ex parte Walden,785 So.2d at 339.
Meanwhile, on August 20, 1999, Hutchinson created the Hutchinson trust for the benefit of his son, George Ellis Hutchinson, Jr. On August 26, 1999, Hutchinson executed a document purporting to "give[] and transfer[]" to the Hutchinson trust "[a]ll monies advanced to AMC or its lawyers or funds used for any purpose for AMC and provided by George E. Hutchinson." In or around 2000, Hutchinson and his wife divorced, and Hutchinson subsequently filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code.
By April 2000, Walden's judgment against Smith in case no. CV-95-1093 remained unsatisfied. Consequently, on or about April 12, 2000, Walden filed an "application pursuant to Rule 70, Alabama Rules of Civil Procedure[,] for a judgment directing [Smith] to transfer stock [in the Enterprises] to [Walden], or, in the alternative, for an order divesting title to the stock in [Smith] and vesting title to the stock in [Walden]." The application quoted extensively from Smith's deposition testimony taken on February 3, 1997, in which Smith admitted that he was the "sole owner of all the stock in [the Enterprises]," of which the apartments were the *Page 1112 
sole asset. On or about August 11, 2000, the Montgomery Circuit Court entered the following order:
 "[Walden] having made application for an Order divesting title to stock [in the Enterprises] from [Smith] and into [Walden] pursuant to enforcement of the judgments heretofore obtained in this court by [Walden], and the court having considered the application and the evidence presented ore terms, the court finds from the credible evidence, which includes [Smith's] tax returns, [Smith's] admissions in depositions, pleadings of record, and records from [the Department of Housing and Urban Development], that [Smith] is the sole owner of all of the common stock in [the Enterprises], an Alabama corporation, which holds title to and owns [the apartments]. Now, therefore, for good cause shown, it is hereby
 "ORDERED that [Walden's] application is granted and Willadean Walden is vested with and is the owner of all of the common stock in [the Enterprises] and [Smith] shall forthwith deliver and turn over to [Walden] all of the books and records of said corporation."
Subsequently, Caspari sought to intervene in case no. CV-95-1093. According to Walden, Caspari's first motion to intervene was denied on November 2, 2000, and a second motion was filed approximately a year later. The disposition of Caspari's second motion is unclear. However, from an order entered by the Montgomery Circuit Court on June 5, 2002, it is clear that Caspari "appeared in court" as trustee of the "Hugh V. Smith, Jr., Children's Trust" ("the Children's Trust"), contending that the Enterprises stock was, in fact, owned — not by Smith — but by the Children's Trust, of which she was trustee. More specifically, the trial court's order stated, in pertinent part:
 "1. The court previously entered an order dated August [11], 2000. The intent of the order was to allow the judgment in favor of Willadean Walden and against Hugh V. Smith, Jr., to be collected out of corporate stock or assets of [the Enterprises]. [The only] corporate asset[] is [the apartments], in Prattville, Alabama. The court has since been informed that the stock of [the Enterprises] is not owned by the judgment debtor, Hugh V. Smith, Jr., but, to the contrary, is owned by Annee Caspari, as trustee of [the Children's Trust]. At the time of the order of August [11], 2000, neither Annee Caspari, as trustee of [the Children's Trust] nor [the Enterprises] was a party in the case.
 "2. The court is further informed that the value of . . . [the apartments] exceeds the judgment amount against [Smith].
 "3. The court further finds that Annee Caspari, as trustee of the [Children's Trust], has appeared in court through her attorneys and has represented to the court that [the Enterprises] will refinance the apartments and lend sufficient money to [Smith] to pay the judgment amount with interest to [Walden]
within ninety days.
 "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
 "1. The court reconsiders its order of August [11], 2000, because neither Annee Caspari, as trustee of [the Children's Trust], nor [the Enterprises] was before the court as a party.
 "2. The portion of the order of August [11], 2000, which awards the ownership of the stock of [the Enterprises] to [Walden] is vacated in favor of the award of a lien on the stock of [the Enterprises], which is an asset of Annee *Page 1113 
Caspari, as trustee of [the Children's Trust], and the underlying assets of [the Enterprises], as stated in the next . . . paragraph.
 "3. Based on (a) the court appearance of Annee Caspari, as trustee of [the Children's Trust], as owner of the stock of [the Enterprises], (b) the representation of [Caspari] that [the Enterprises] would refinance [the apartments], and (c) the representation of [Caspari] that [the Enterprises] will lend [Smith] enough money to pay the judgment owed to [Walden], the court determines that Annee Caspari, as trustee of [the Children's Trust], and [the Enterprises] each separately have sufficient interest in the case before this court for the court to enter an order affecting, on the one hand, the ownership of Annee Caspari, as trustee of the [Children's Trust] in the stock of [the Enterprises], and, on the other hand, all of the assets of [the Enterprises]. It is therefore ordered that the judgment in favor of Willadean Walden is a lien on such portion of the assets of [the Enterprises] (including [the apartments]) as is necessary to satisfy such judgment. It is therefore further ordered that the judgment in favor of Willadean Walden is a lien against the following asset (in rem) of Annee Caspari, as trustee of the [Children's Trust] in [the Enterprises] as is necessary to satisfy such judgment.
 . . .
 "5. Other than the lien of the judgment, it is the order of this court that neither this order nor the order of August [11], 2000, should be construed as a cloud on the title of [the Enterprises] to [the apartments], or any of its other assets."
(Emphasis added.)
In short, the June 5, 2002, judgment set aside the August 11, 2000, judgment, which had purported to award Waldenownership of both the stock of the Enterprises and the apartments and, instead, awarded her a lien on the stock and the apartments in the amount sufficient to satisfy her judgment against Smith. Walden appealed from the June 5, 2002, judgment, challenging the jurisdiction of the Montgomery Circuit Court to set aside its August 11, 2000, judgment. On March 7, 2003, the Court of Civil Appeals affirmed the June 5, 2002, judgment, without an opinion. Walden v. Smith,883 So.2d 743 (Ala.Civ.App. 2003) (table). Walden sought certiorari review of that decision in this Court. Meanwhile, in March 2003, on remand from this Court, Walden obtained a judgment on a jury verdict against Smith on her fraudulent-suppression claim for $70,450. Walden sought the opportunity — through an appeal from that judgment, as well as through her petition for a writ of certiorari to the Court of Civil Appeals — to challenge in this Court the jurisdiction of the Montgomery Circuit Court to vacate its August 11, 2000, judgment. On April 16, 2004, this Court affirmed the March 2003 judgment, Walden v. Smith,891 So.2d 837 (Ala. 2004), and denied Walden's certiorari petition.Ex parte Walden (No. 1021373), 916 So.2d 632
(Ala. 2004) (table).
On June 25, 2003, R. Wayne Sandlin and Richard Ensley were, as Hutchinson had originally been, unsecured creditors of Smith's. On that date, while Walden's appellate proceedings were pending in this Court, Sandlin and Ensley met and discussed ways to secure their accounts of approximately $147,000 and $127,000, respectively. At the time of the meeting, Sandlin and Ensley had actual knowledge of the litigation involving the stock in Enterprises and the apartments.
In order to secure their accounts, Sandlin, Richard Ensley, and Patricia Ensley formed ES. ES then "loaned" the Enterprises *Page 1114 
$580,000. According to the "loan agreement," which was executed by Sandlin, as manager of ES, and by Caspari, as president of the Enterprises at that time, the loan proceeds were to be distributed among various persons and entities, none of which was Walden. Specifically, (1) $266,045 was to pay off an existing mortgage on the apartments held by Reilly Mortgage Associates, L.P.; (2) $147,454 was to go to Sandlin for, among other things, "management" services; (3) $127,454 was to go to Richard Ensley for, among other things, "management" services; (4) $9,500 was to pay closing costs; and (5) approximately $29,547 was to "be placed in a working capital reserve fund for [the apartments]." In return for the loan, ES received from the Enterprises a promissory note and a "first mortgage" on the apartments. These instruments were signed on July 29, 2003, and the mortgage was recorded on August 4, 2003.
Smith died on June 18, 2004,[1] and, on August 16, 2004, Hutchinson recorded his quitclaim deed. On October 12, 2004, Walden, whose judgment in the underlying case still remained unsatisfied, sought relief in case no. CV-95-1093, alleging that the June 5, 2002, judgment setting aside the August 11, 2000, judgment had been procured by a fraud on the court. According to Walden, Caspari's attorneys, "as officers of the court, assured the court that Ms. Caspari would refinance the apartment complex, and [that] she would loan Mr. Smith sufficient funds to pay Mrs. Walden's judgments." Walden alleged that ES was formed as a "mere sham" in order to "simulate a mortgage on the apartment complex," with the purpose of "hindering, delaying, or preventing Mrs. Walden from collecting her judgments." She averred that the Enterprises mortgaged the apartments "in defiance of the court's orders of . . . August [11], 2000, and June 5, 2002, of which [the Ensleys, Sandlin, Smith, and Caspari] had actual or constructive knowledge."
Similarly, as to Hutchinson, Walden alleged that at the time the representations were made to the court that Caspari "would refinance the apartment complex and would make a loan to Mr. Smith to pay Mrs. Walden's judgments, Mr. Smith was concealing the conveyance to Mr. Hutchinson from the court." Thus, according to Walden, "the quitclaim deed to Mr. Hutchinson" also represented a fraudulent conveyance and "should be declared null and void." She averred that the court had set aside its August 11, 2000, judgment in reliance on the alleged misrepresentations, and she sought, among other things, the following specific relief:
 "b. To hold Ms. Caspari in contempt of court for knowingly, willfully, and contumaciously violating the court's orders and directives;
 "c. To set aside the June 5, 2002, order on grounds that it was knowingly procured by misrepresentations amounting to a fraud upon the court, and because it was not based upon any legal evidence before the court;
 "d. To reinstate the August 11, 2000, order because it was based upon legal evidence before the court, i.e., testimony of witnesses and documentary evidence;
 ". . . .
 "g. To declare the mortgage to [ES] void . . .; [and]
 "h. To declare the quitclaim deed to George Hutchinson void. . . . " *Page 1115 
Those individuals or entities that never becameparties in case no. CV-95-1093 are Hutchinson, the Hutchinson trust, ES, Richard Ensley, Patricia Ensley, and Sandlin. Those who were parties in case no. CV-95-1093, however, agreed and consented to the entry of a judgment vacating the judgment of June 5, 2002, and reinstating the judgment of August 11, 2000, as requested by Walden. Thus, on October 26, 2004, the trial court entered a judgment pursuant to that agreement. As a result, Walden purportedly owned, once again, all the common stock in the Enterprises, as well as the apartments. The parties' agreement was succinctly stated in an order entered on November 4, 2004, clarifying and correcting the October 26 order:
 "[T]he intent of the August 11, 2000, order, which this court has reinstated, was to vest all of the common stock in [the Enterprises] in the plaintiff, Willadean Walden. This court found from the evidence presented to the court on July 7, 2000, that [the Enterprises] owned Danya Park Garden Apartments, an apartment complex in Prattville, Alabama. To clear up any confusion as to the owner of said apartment complex, the court hereby declares that the plaintiff, Willadean Walden is the owner of the common stock in [the Enterprises], and she is, therefore, the owner of the fee simple title to [the apartments]."
Thirteen days later, on November 17, 2004, Walden and Danya Park commenced this action, CV-04-390, in theAutauga Circuit Court, against, among others, Hutchinson; ES; Richard Ensley; Patricia Ensley; Sandlin; Caspari, individually and as trustee of the Children's Trust; and the estate. Her complaint as last amended included claims of (1) ejectment, (2) conspiracy to defraud, and (3) trespass. In addition to these claims, as well as claims for declaratory and injunctive relief against the various parties, Walden's complaint contained a claim to quiet title, seeking a judgment "declaring that she has the entire undivided fee simple interest in and to [the apartments] with no restrictions thereon." She also sought compensatory and punitive damages.
The Hutchinson trust was allowed to intervene, and it filed a counterclaim against Walden. It sought a judgment declaring (1) that "the quitclaim deed executed from [the Enterprises] to George Hutchinson and ultimately transferred to the [Hutchinson trust constituted] a mortgage in favor of [the Hutchinson trust]," and (2) that "Walden has no further interest, either legal or equitable, in the property the subject of this action other than her judgment liens."
The parties filed motions and cross-motions for a summary judgment. On October 27, 2005, the trial court entered a summary judgment in favor of Sandlin, and certified the judgment as a final judgment pursuant to Ala. R. Civ. P. 54(b). Walden appealed, and this Court affirmed that judgment without an opinion in Walden v. Sandlin (No. 1050324, May 12, 2006), 976 So.2d 1059 (Ala. 2006) (table).[2]
On December 4, 2006, the trial court entered a summary judgment in favor of ES; the Ensleys; Caspari, individually and as executrix of the estate of Hugh Smith; and Hutchinson "and/or" the Hutchinson trust. In particular, the trial court stated:
 "1. [T]he mortgage in favor of [ES] is hereby adjudicated as a good and valid mortgage on the [apartments]. . . . The mortgage is adjudicated as a superior lien to the claims of the Plaintiffs and *Page 1116 
to claims of Defendant George Hutchinson, or his assigns. . . .
 "2. This court finds that the quit-claim deed executed in favor of Defendant George Hutchinson is, in fact, an equitable mortgage, and, based on the chronology as articulated herein, constitutes a subordinate and secondary lien on the [apartments] . . . subject only to the first mortgage lien of the [ES] mortgage.
 "3. . . . [S]ummary judgment is hereby GRANTED in favor of Defendants [ES], Richard Ensley, and Patricia Ensley as to all claims filed by the Plaintiffs in this cause. This court further finds that Defendants Richard Ensley, Patricia Ensley, and [ES's] motions for summary judgment are due to be, and are hereby GRANTED.
 "4. . . . George Hutchinson's motion for summary judgment is hereby GRANTED to the extent that this court finds him and/or his assigns to have a secondary lien on the subject property.
 . . .
 "5. . . . [S]ummary judgment is hereby GRANTED in favor of Annee Caspari, both individually, and as executrix of the estate of [Hugh V. Smith].
 "6. . . . Plaintiffs' motions for summary judgment are DENIED and thus all of their claims against Defendants [ES], Richard Ensley, Patricia Ensley, and George Hutchinson are hereby DISMISSED."
Walden and Danya Park filed a motion to vacate the judgment pursuant to Ala. R. Civ. P. 59(e). On January 19, 2007, the trial court denied that motion and certified its judgment as final pursuant to Rule 54(b). From that judgment, Walden and Danya Park (hereinafter collectively referred to as "Walden") appealed.
 II. Discussion
On appeal, Walden argues that the trial court erred, because, she says, "she is entitled to an order ejecting appellees from her property, quieting title to her property, . . . andawarding her damages for fraud." Walden's brief, at 10 (emphasis added). However, the only issue briefed by Walden is the quiet-title claim. Thus, we confine our consideration to matters directly related to her quiet-title claim as it involves the three sets of appellees, namely, (1) Caspari, individually and as the executrix of the estate; (2) George Hutchinson and the Hutchinson trust (hereinafter referred to collectively as "the Hutchinson parties"); and (3) ES and the Ensleys.
Preliminarily, Walden argues that the judgment entered in this case constitutes an impermissible collateral attack on the November 4, 2004, consent judgment in case no. CV-95-1093. However, her argument simply begs the inescapable question: What is the legal effect in this case of that judgment? That question was placed squarely in issue by Walden, herself, when she commenced this quiet-title action in Autauga County. For their part, the appellees contend that the consent judgment was invalid, because, they insist, the Montgomery Circuit Court lacked jurisdiction to set aside the June 5, 2002, judgment. Because of the peculiar procedural posture of this case and our ultimate resolution, the question of the validity of the November 4, 2004, judgment is purely academic. For purposes of this appeal, therefore, we will treat it as valid.
 A. Caspari and the Estate
Neither Caspari individually nor as executrix of the estate of Hugh Smith claims any right or title in the apartments or the stock of the Enterprises, which, apparently, has been renamed Danya Park. Indeed, *Page 1117 
it was Annee Caspari, individually and as trustee of the Children's Trust, who consented to the entry of the November 4, 2004, judgment in case no. CV-95-1093, which awarded all the corporation's stock — along with the apartments — to Willadean Walden. Moreover, it was Annee Caspari, individually and as trustee of the Children's Trust, who persuaded the Montgomery Circuit Court in 2002 thatHugh Smith did not own the stock or the apartments.
The suggestion cannot now be entertained that the stock or the apartments are, somehow, part of Smith's estate. To the extent the quiet-title claim is directed at Caspari in any capacity, that claim is moot. Thus, the trial court did not err in dismissing the quiet-title claim against Caspari in her individual and representative capacities.
 B. The Hutchinson Parties
The trial court held that "the quitclaim deed executed in favor of Defendant George Hutchinson is, in fact, an equitable mortgage" and that a summary judgment was due to be entered, giving "him and/or his assigns . . . a secondary lien on the [apartments]." (Emphasis added.) For the purposes of this appeal, we will assume that the trial court correctly characterized the transaction between Hutchinson, Smith, and the Enterprises as giving Hutchinson a mortgage on the apartments (hereinafter referred to as "the quitclaim
Walden contends that neither of the Hutchinson parties has an interest in the quitclaim mortgage. This is so, because, she argues, Hutchinson is judicially estopped to claim an interest, and because, according to her, there is not substantial evidence of a valid transfer of Hutchinson's interest to the Hutchinson trust. We first address the judicial-estoppel argument.
 1. Judicial estoppel
According to Walden, Hutchinson is judicially estopped from claiming an interest in the apartments. This is so, because, she argues, Hutchinson failed to claim the quitclaim mortgage as an asset, either incident to his divorce or in his Chapter 7 bankruptcy proceeding. We agree.
Recently, we said:
 "[T]he purpose of judicial estoppel is "`to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."' New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982), and United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993)). Simply stated, `judicial estoppel prevents parties from "playing `fast and loose with the courts,'"' New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808 (quoting Scarano v. Central R.R., 203 F.2d 510, 513 (3d Cir. 1953), quoting in turn Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949)), and prevents `the system from being manipulated by "chameleonic litigants."' Blanton v. Inco Alloys Int'l, Inc., 108 F.3d 104, 108 (6th Cir. 1997)."
Middleton v. Caterpillar Indus., Inc., 979 So.2d 53,59 (Ala. 2007).
In support of her motion for a summary judgment filed on November 28, 2005, Walden presented the affidavit of her attorney, Gatewood Walden, who stated:
 "18. In addition, Mr. Hutchinson is judicially estopped from claiming an interest in [the apartments] in the instant case because he did not claim an interest in [the apartments] in either his divorce case, or in his Chapter 7 bankruptcy proceedings. *Page 1118 
 "19. I have personal first hand knowledge of the contents of the official records pertaining to Mr. Hutchinson's divorce from his former wife . . ., and I also have personal firsthand knowledge of the contents of the official records of Mr. Hutchinson's Chapter 7 bankruptcy proceedings. . . .
 . . .
 "21. However, according to the official court records, Mr. Hutchinson's purported interest in [the apartments] was not listed as an asset in either the divorce case or in the Chapter 7 bankruptcy proceeding."
(Emphasis added.)
 "Rule 56(e), Ala. R. Civ. P., generally requires that `[s]worn or certified copies' of documents referred to in an affidavit offered supporting or opposing a motion for a summary judgment be attached to the affidavit. However, if an affidavit or the documents attached to an affidavit fail to comply with this rule, the opposing party must object to the admissibility of the affidavit or the document and move to strike. Ex parte Elba Gen. Hosp. Nursing Home, Inc., 828 So.2d 308, 312-13
(Ala. 2001) (noting that a party must object to evidence submitted in support of a motion for a summary judgment that does not comply with Rule 56(e), Ala. R. Civ. P.); Chatham v. CSX Transp., Inc., 613 So.2d 341, 344 (Ala. 1993) (`A party must move the trial court to strike any nonadmissible evidence that violates Rule 56(e). Failure to do so waives any objection on appeal and allows this Court to consider the defective evidence.')."
Elizabeth Homes, L.L.C. v. Cato, 968 So.2d 1, 4-5
(Ala. 2007) (footnote and emphasis omitted); see also Exparte Unitrin, Inc., 920 So.2d 557, 560 (Ala. 2005) (citingBerry Mountain Mining Co. v. American Res. Ins. Co.,541 So.2d 4 (Ala. 1989), for the proposition that "defendants' failure to move to strike unauthenticated documents attached to plaintiffs motion for a summary judgment waived any objections to the trial court's reliance on those documents").
Hutchinson did not move to strike the affidavit in the trial court. In fact, he does not challenge it, or its contents, in this Court. Thus, we consider it.
Indeed, Hutchinson makes only two arguments against the application of judicial estoppel. First, he contends that the doctrine does not apply, because, he insists, Walden has failed to show that she changed "her position to her prejudice." Hutchinson's brief, at 22. In that respect, Hutchinson misapprehends the elements of judicial estoppel in this State.
"`[R]eliance is not an element of judicial estoppel'" in Alabama. Ex parte First Alabama Bank, 883 So.2d 1236,1244 (Ala. 2003) (holding that judicial estoppel was successfully invoked against a litigant who took inconsistent positions in prior divorce and bankruptcy proceedings and quoting with approval Rand G. Boyers, PrecludingInconsistent Statements: The Doctrine of JudicialEstoppel, 80 Nw. U. L.Rev. 1244, 1249 (1986)). "`Reliance is not a factor because any inconsistent statement violates the sanctity of the oath and injures the integrity of the judicial process, whether or not some party relied on the first statement. The inconsistency itself damages "public confidence in the purity . . . of judicial proceedings."'"883 So.2d at 1244 (quoting Boyers, 80 Nw. U. L.Rev. at 1249 (emphasis added in Ex parte First Alabama Bank)). Hutchinson presented no evidence in opposition to Walden's summary-judgment motion on the ground that he is judicially estopped from claiming an interest in the apartments. Thus, we hold that Hutchinson *Page 1119 
is judicially estopped from claiming that he owns the quitclaim mortgage on the apartments, and the trial court erred in denying Walden's summary-judgment motion against Hutchinson.
 2. Valid transfer
Hutchinson, however, also makes, in effect, an alternative argument applicable to the Hutchinson trust, namely, that thetrustee now holds the quitclaim mortgage. Although he contends, at one point in his brief, that "the [trial] courtcorrectly determined the existence of an equitable mortgagein favor of George Hutchinson," Hutchinson's brief, at 17 (emphasis added), elsewhere in his brief, he contends that he "created the George Hutchinson, Junior, present interest trust [No.] 1 on August 20, 1999, . . . and transferred the Smithmortgage to it." Hutchinson's brief, at 20 (emphasis
The basis for Hutchinson's argument that he assigned an interest in the apartments to the Hutchinson trust is a document executed by Hutchinson on August 26, 1999, which states, in toto:
 "SCHEDULE `A'
 "ADDITIONS BY GIFT TO THE GEORGE ELLIS HUTCHINSON, JR. PRESENT INTEREST TRUST
 "(1) The undersigned Grantor hereby gives and transfers to George Ellis Hutchinson, Jr. Present Interest Trust No. 1 the following:
 "Stock in Auburn Medical Center, Certificate Number(s): 19, 31, 35, and 36. Any and all present and future assets, funds, payments of receivables, shares of stock, tangible and intangible properties of any kind as described in a statement dated August 20, 1999, signed by the President of the Auburn Medical Center, Inc., and attached hereto.
"/s/ George Ellis Hutchinson
George Ellis Hutchinson
"Dated: August 26, 1999
"The undersigned, Donald Ray Hutchinson, as Trustee, hereby accepts the foregoing additions to Trust, this the 26th day of August, 1999.
"/s/ Donald Ray Hutchinson
Donald Ray Hutchinson"
(Emphasis added.)
This writing was accompanied by a document signed by Benny H. Sanders, as president of AMC. It stated:
 "It is understood that George E. Hutchinson has transferred all of his stock in Auburn Medical Center, Inc. (AMC), either that stock already received or that stock to be issued, to a trust set up for his son on August 20, 1999. All monies advanced to AMC or its lawyers or funds used for any purpose for AMC and provided by George E. Hutchinson, are the property of said trust, including any stock owned by said trust. Any and all funds provided to AMC by any entities of George E. Hutchinson are to be repaid to the Trustee of the George Ellis Hutchinson, Jr., Trust. Further, any and all dividends due from AMC are to be paid to the said trustee for the benefit of George Ellis Hutchinson, Jr."
(Emphasis added.) Both documents are hereinafter collectively referred to as "Schedule A."
Walden contends that Schedule A is insufficient, as amatter of law, to transfer the quitclaim mortgage to the Hutchinson trust. In particular, she states: "The documents Mr. Hutchinson relies on as proof of his conveyance to a trust contain no legal description of any real property whatsoever, much less, a legal description *Page 1120 
of [the apartments]. Nor do they comply with various otherstatutory requirements of a conveyance." Walden's reply brief to Hutchinson's brief, at 4-5 (emphasis added). However, she cites no legal authority that supports this argument. Indeed, she merely cites an inapposite statute, namely, § 35-4-21, Ala. Code 1975.
"Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant's . . . brief contain `citations to the cases, statutes, [and] other authorities . . . relied on,'"University of South Alabama v. Progressive Ins. Co.,904 So.2d 1242, 1247 (Ala. 2004), and the effect of noncompliance with this rule is well established. "`[W]here no legal authority is cited or argued, the effect is the sameas if no argument had been made.'" Steele v.Rosenfeld, LLC, 936 So.2d 488, 493 (Ala. 2005) (quotingBennett v. Bennett, 506 So.2d 1021, 1023
(Ala.Civ.App. 1987) (emphasis added in Steele)). This is so, because "it is neither this Court's duty nor its function to perform an appellant's legal research." City ofBirmingham v. Business Realty Inv. Co., 722 So.2d 747, 752
(Ala. 1998). Because of the absence of a legally supported argument against the efficacy of Schedule A, the trial court's judgment that the Hutchinson trust has a valid "secondary lien on the subject property" is essentially unchallenged on appeal. We, therefore, affirm the judgment to the extent of that holding.
 C. ES and the Hutchinson Trust
Finally, Walden contends that the law of lis pendens
operates in her favor to cut off entirely the interests of (1) the Hutchinson trust, and (2) ES and Richard and Patricia Ensley (hereinafter collectively referred to as "ES") in the apartments. Specifically, she says that "[t]his is a civil action, governed in large part by the lis pendensdoctrine, for ejectment [and] to quiet title." Walden's brief, at 1 (emphasis added). Elsewhere, she says that "[t]his case is largely a lis pendens case." Walden's brief, at 3 (emphasis added). We agree with Walden that the lispendens issue is dispositive of this case.
According to Walden, while Willadean Walden's claims were pending in case no. CV-95-1093, Smith "unlawfully mortgaged [the apartments] to [ES], who had actual knowledge of the case being then on appeal." Walden's brief, at 9. She contends that she is, pursuant to the November 4, 2004, consent judgment in that case, "the lawful owner of the stock in the corporation, and as equitable owner of the corporation's assets (an apartment complex), [the] appellees' mortgages areinvalid since they were not taken in good faith."Id. (emphasis added).
However, despite her contention that this case is governed by the law of lis pendens, Walden cites no lispendens law in her principal brief. To be sure, she does cite cases generally defining the term "bona fide
purchaser." The problem with Walden's authority, however, is that there is no real issue in this case regarding whether the Hutchinson trust and ES are bona fide purchasers. Instead, the dispositive question is, assuming that they arenot bona fide purchasers, is Walden's interest in the apartments superior to their interests?
Despite the fact that Willadean Walden previously argued to the Court of Civil Appeals and to this Court that the Montgomery Circuit Court lacked the power to enter its June 5, 2002, judgment setting aside the August 11, 2000, judgment, she now strenuously argues that the Montgomery Circuit Courthad the power on November 4, 2004, to set aside its June 5, 2002, judgment, 29 months after that judgment, and 7 months after this Court's affirmance and denial of certiorari review, *Page 1121 
on April 16, 2004, which — at least for awhile — concluded the litigation in case no. CV-95-1093. Her position is that Ala. R. Civ. P. 60(b) authorizes a trial court to set aside a judgment at any time, either during an appeal of that judgment, or after the judgment has been affirmed on appeal. Assuming — without deciding — that there is merit to this proposition, it does not follow that Walden obtains a favorable result. This is so, because she makes no showing as to how this principle relates to the doctrine of lis pendens.
 "Generally, the doctrine of lis pendens commences with the filing of an action and the contemporaneous recordation of a notice of lis pendens, and continues for the duration of the litigation until it is terminated by judgment and the expiration of any appropriate period for appeal, or appellate determination, if an appeal is taken."
Jesse P. Evans III, Alabama Property Rights andRemedies § 5.18 (3d ed. 2004) (emphasis added). Although ES received its mortgage on June 29, 2003, after a final judgment in case no. CV-95-1093, and while that judgment was under appellate review, that litigation was concluded by the judgment of this Court on April 16, 2004, in a mannerfavorable to ES. In other words, ES took its mortgage, subject to the risk that the judgment of June 5, 2002, which gave Walden only a lien on the apartments, would bereversed on appeal. That did not happen, of course. Instead, the judgment was affirmed.
Hutchinson, on the other hand, received his quitclaim mortgage on October 21, 1998, before commencement of the litigation that placed the ownership of the apartments in issue. Ownership of the apartments did not become an issue until April 12, 2000 — at the earliest — when Willadean Walden filed her Rule 70, Ala. R. Civ. P., application seeking to acquire title to the Enterprises' stock.[3]
Walden does not explain how the doctrine of lispendens operates to invalidate a mortgage taken before the end of an appellate process that is finally resolved in favor of the mortgage. Indeed, a necessary, but unstated, corollary of her theory of the case is that a lis pendens eithersurvives final appellate review or may be revivedat any time by a Rule 60(b), Ala. R. Civ. P., motion. It appears, however, that a lis pendens that is subject to survival, or a Rule 60(b) revival, would essentially remain a cloud on the title of real estate in perpetuity.
Walden does not attempt to explain the legal basis for such a theory, nor does she cite any lis pendens law in her principal brief. Although Walden does cite lis pendens
cases in two of her reply briefs, they come too late. This is so, because an "`argument may not be raised, nor may an argument be supported by citations to authority, for the first time in an appellant's reply brief.'" Steele v. Rosenfeld,LLC, 936 So.2d 488, 493 (Ala. 2005) (quoting ImprovedBenevolent Protective Order of Elks v. Moss,855 So.2d 1107, 1111 (Ala.Civ.App. 2003), abrogated on othergrounds, Ex parte Full Circle Distribution, L.L.C.,883 So.2d 638 (Ala. 2003)). "Where an appellant first cites authority for an argument in [her] reply brief, it is as if the argument was first raised in that reply brief, and it will not be considered." 936 So.2d at 493.[4] *Page 1122 
Having thus essentially defaulted on a dispositive issue in this case, Walden has presented no basis for a reversal of the summary judgment in favor of ES and the Hutchinson trust. Consequently, that judgment is affirmed.
 III. Summary
In summary, the quiet-title claims against Caspari in any capacity are moot. Because the trial court did not err in dismissing the quiet-title claims against Caspari in her individual and representative capacities, its judgment is affirmed to that extent. The summary judgment in favor of ES and the Hutchinson trust is affirmed. The judgment in favor of Hutchinson, to the extent it recognized a lien in his favor, is reversed, and the case is remanded for the entry of a judgment in favor of Walden and against him as to that issue on the basis of judicial estoppel. In all other respects, the judgment from which Walden appeals is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., concurs in the result.
[1] Letters testamentary were issued to Caspari on or before November 4, 2004, and the estate was eventually added as a party in case no. CV-95-1093.
[2] Sandlin sold his interest in ES to the Ensleys in 2004.
[3] Walden filed no lis pendens. However, she did file in the Autauga Probate Court a copy of the Montgomery Circuit Court's order of August 11, 2000.
[4] In any case, the authority cited in Walden's reply briefs are cited only for general principles of law that provide no support for her peculiar theory of this case. It is not the "`function of the appellate courts to "make and address legal arguments for a party based on undelineated generalpropositions not supported by sufficient authority or argument."'" Beachcroft Props., LLP v. City ofAlabaster, 901 So.2d 703, 708 (Ala. 2004) (emphasis added) (quoting Pileri Indus. Inc. v. Consolidated Indus.,Inc., 740 So.2d 1108, 1110 (Ala.Civ.App. 1999), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251
(Ala. 1994)). "Authority supporting only `general propositions of law' does not constitute a sufficient argument for reversal." Beachcroft Props., LLP, 901 So.2d at 708
(quoting Geisenhoff v. Geisenhoff, 693 So.2d 489, 491
(Ala.Civ.App. 1997)).