Rel: May 19, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### SC-2022-1061
_____

## Ex parte MUSA Properties, LLC

## PETITION FOR WRIT OF MANDAMUS

## (In re: R.K. Allen Oil Co., Inc.

## v.

## MUSA Properties, LLC)

## (Calhoun Circuit Court, CV-22-900138)

MENDHEIM, Justice.

MUSA Properties, LLC ("MUSA"), and R.K. Allen Oil Co., Inc. ("Allen Oil"), entered into a real-estate sales contract ("the sales contract") in which MUSA agreed to purchase from Allen Oil a gasoline service station and convenience store ("the property"). The terms of the sales contract were not fulfilled, and the property was not transferred to MUSA. Allen Oil filed a lawsuit in the Calhoun Circuit Court ("the circuit court") against MUSA, alleging various causes of action based on the sales contract; MUSA filed various counterclaims in response. MUSA also filed in the Calhoun Probate Court ("the probate court") a notice of lis pendens describing the property. In an interlocutory order, the circuit court later determined that MUSA did not have a right to or interest in the property, and, upon the motion of Allen Oil, the circuit court entered an order expunging the lis pendens notice. MUSA now petitions this Court for a writ of mandamus directing the circuit court to vacate its order expunging the lis pendens notice. We grant the petition and issue the writ.

<u>Facts and Procedural History</u>

Pursuant to the terms of the sales contract, MUSA agreed to purchase the property from Allen Oil for $1,250,000 and to close on the

2

sale on May 31, 2021; $50,000 of the purchase price was to be deposited with the closing attorney as earnest money upon execution of the sales contract, with the remainder of the purchase price due upon closing. The sales contract includes the following relevant provisions:

> "[MUSA] shall be responsible for obtaining a title examination, survey of the property and purchasing title insurance, if desired. The cost of survey shall be paid by [MUSA]. If there are objections to title, environmental problems or defects in the improvements same will be communicated to [Allen Oil] promptly upon discovery. [Allen Oil] shall have at least thirty (30) days to cure said defects, but no more than sixty (60) days. The terms of this agreement shall be extended, if necessary, to accommodate this period of correction. This contract is contingent upon a satisfactory survey, environmental inspection and building inspection. In the event title defects or other problems cannot be cured, all earnest money shall be refunded to [MUSA] and this agreement shall become null and void. [MUSA] shall have the right to access the property to inspect it, but such inspection shall not change the purchase price.

> "....

> " This contract is contingent upon the following:

> "1. [MUSA's] satisfaction with the results of a title examination and survey.

> "2. [MUSA's] satisfaction with the results of any and all environmental inspections including but not limited to geological surveys, groundwater sampling, Phase I and Phase II environmental site assessments, etc.

> "....

3

"In the event [MUSA] fails to carry out and to perform the terms of this agreement, any funds paid by [MUSA] to [Allen Oil] shall be forfeited as liquidated damages at the option of [Allen Oil] (provided [Allen Oil] agrees to the cancellation of this contract). In the event [Allen Oil] fails to carry out and to perform the terms of this agreement or fails to cure any title defects within a reasonable time, [MUSA] may avail itself of one of the following remedies: (1) [MUSA] will receive a refund of earnest money plus reimbursement for any sums expended by [MUSA] in conjunction with this transaction including but not limited to expenses for title examination, attorney's fees, appraisal, credit reports, survey, environmental studies, etc. Upon payment by [Allen Oil] of such expenses, the contract will become void; or (2) [MUSA] may elect to proceed with specific performance."

The parties also entered into a lease agreement "in order to allow [MUSA] to take possession of the [property], operate the business located thereon, and to otherwise prepare for the purchase of [the property]."

Subsequently, MUSA hired Karst Environmental to conduct a "Phase II Environmental Site Assessment" of the property "to determine whether the historical operation of the underground storage tanks (gasoline and diesel) on the … property has adversely impacted the soil and groundwater onsite." Karst Environmental conducted its assessment on April 21, 2021, and produced a report on April 30, 2021, summarizing the findings of its assessment ("the report"). The report noted that "[t]here is one previous petroleum incident reported for [the

4

property] in the regulatory agency database. That incident, UST96-11-05, was resolved with a No Further Action (NFA) in April, 1995. The report stated, in pertinent part, as follows (there are some terms and abbreviations used in the report that are not defined by the report):

"The findings of this Phase II Environmental Site Assessment conclude that, 1) BTEX, MTBE, and Naphthalene concentrations in the soils exceeded the [Alabama Department of Environmental Management ('ADEM')] Initial Screening Limits, 2) BTEX, MTBE, and Naphthalene concentrations in the groundwater exceeded the ADEM Initial Screening Limit, 3) No liquid phase hydrocarbons (LPHs) were identified in either the soils or groundwater, and 4) if current compliance is maintained, the facility is eligible for participation through the [Alabama Tank Trust Fund] (in the event of a future petroleum release).

"The findings of this investigation should be discussed with … Allen Oil …. The release should be reported to the ADEM in a timely manner by forwarding this report to the ADEM Corrective Action Unit for review. The ADEM office in Montgomery, Alabama will determine whether further investigation will be required under the Alabama Tank Trust Fund …."

On May 4, 2021, the report was submitted to the Alabama Department of Environmental Management ("ADEM") for review. After reviewing the report, ADEM sent a letter to Allen Oil on May 11, 2021, stating that,

"[b]ased on the previous release incident UST96-11-05 and the submitted report, [ADEM] has determined that no further

investigative or corrective actions will be required for [the property] at this time. [ADEM] is not making a determination as to contamination which may or may not exist at [the property] and will review any additional information that may warrant further consideration should it become available."

(Emphasis in original.)

After receiving the report and ADEM's May 11, 2021, letter, MUSA's trial attorney, Drew Senter, and Allen Oil's trial attorney, Charles Gaines, communicated through emails and letters concerning the sales contract and whether to proceed with the sale of the property. On May 21, 2021, Senter sent Gaines the following email:

"I suspect by now you have seen the … report and letter from ADEM. We seem to be at an impasse. The … report shows significant contamination. Our environmental folks believe that the contamination is active and have warned us about taking the property without a clean-up. In a first for me, ADEM has issued a very weak letter stating that 'no corrective action is required at this time.' They do state, however, that they are making no opinions about contamination at the site and will review additional information.

"That letter provides us with no comfort, especially in light of the warnings from our environmental experts.

"[MUSA] cannot buy the property without some remedial action. [Is Allen Oil] willing to go back to ADEM to see if we can get them to take a more serious look and require remediation in accordance with their plan? I know this all sounds counterintuitive for [Allen Oil], but [MUSA] is not in

a position to request any more from ADEM on a property [MUSA] does not own. If we cannot get the contamination cleaned in accordance with an ADEM remediation plan, I do not think [MUSA] will be able to go forward with the purchase."

In response, on June 15, 2021, Gaines sent the following letter to

Senter:

"I fear we may have a problem between our clients. [Allen Oil] has consulted an attorney/expert who specializes in the gasoline and motor fuel industry. He has advised that anyone who is in the industry for any length of time knows a no further action (NFA) letter from ADEM is its 'blessing' that no further investigative or remedial action on a site need be done. Even if remedial work is performed ADEM never issues a letter saying the property is 'clean' but instead, gets an NFA even after cleanup has been completed. Since that is the industry standard [Allen Oil] takes the position remedial action is not warranted or necessary and even if it did take place, it would only receive another NFA letter from ADEM.

"In light of that we would like to move forward with the sale and I would like to discuss this with you further."

(Emphasis in original.)

On June 21, 2021, Senter sent Gaines the following email: "Since Allen Oil will not agree to clean up the property, [MUSA] must terminate the [sales] contract and demand a release of its earnest money. [MUSA] will also be vacating the [property] on the first day [it is] permitted to under the lease." (Emphasis in original.)

7

At some point thereafter, Sameer Mousa, the president of MUSA, apparently offered to purchase the property in "as is" condition if Allen Oil would agree to a reduction in the price of $100,000. On October 11, 2021, Gaines sent Senter the following letter:

"Mr. M[o]usa recently contacted [Allen Oil] and told them [MUSA] would close on the purchase of the property if [Allen Oil] would reduce the price by $100,000. That proposal certainly negates [MUSA's] excuse for termination of the [sales] contract which [Allen Oil] didn't think was legitimate anyway in light of what had been received from ADEM.

"I have been instructed to proceed with filing a complaint for specific performance as I believe we can now show there was no legitimate basis for the termination notice. …

"Please discuss this situation with [MUSA] and see if [MUSA] will reconsider [its] position. If not, [Allen Oil is] going to proceed with filing the complaint later this month. I would like to avoid doing so if possible and that is why I am reaching out to you at this time."

On April 5, 2022, Allen Oil sued MUSA for specific performance of the sales contract. The complaint states, in pertinent part:

"11. In terminating the [sales] contract, [MUSA] stated that it was terminating the [sales] contract 'since Allen Oil will not agree to clean up the property.' Said excuse was a pretext for the purpose of trying to obtain a reduction in the purchase price as [MUSA] subsequently stated that [it] would close on the purchase for an offset of One Hundred Thousand Dollars and Zero Cents ($100,000.00).

8

"12. [Allen Oil] has fully performed its obligations under the sales contract and contends [MUSA's] refusal is unjustified and without any legitimate basis for doing so.

"13. [Allen Oil] is ready, willing and able to [perform] under said contract.

"WHEREFORE, [Allen Oil] request[s] that this honorable [court] enter an[] order for Specific Performance ordering [MUSA] … to specifically perform … [its] duties under the [sales] contract, pay damages, and grant such other relied as the court deems just and proper."

On April 8, 2022, MUSA filed an answer to Allen Oil's complaint and also asserted various counterclaims against Allen Oil. MUSA asserted a declaratory-judgment counterclaim requesting that the circuit court enter a judgment declaring the parties' rights under the sales contract. Specifically, MUSA requested a judgment declaring that it had the right to cancel the sales contract and that its right to cancel the sales contract was "contingent, inter alia, on its satisfaction with the results of a Phase II environmental site assessment." MUSA stated in its counterclaim that it "elected not to proceed with concluding the sales [contract]" and that "counsel for MUSA communicated to counsel for … Allen [Oil] that MUSA was dissatisfied with the contents of the … report and would not move forward with the purchase." MUSA also asserted counterclaims alleging breach of the sales contract and seeking specific

9

performance of the sales contract. Although MUSA did not plead its breach-of-contract or specific-performance counterclaims with much specificity, MUSA did state that Allen Oil "committed a default under the terms of the sales [contract] by refusing to cure the contamination" noted in the report. MUSA alleged that, as a result of Allen Oil's alleged breach of the sales contract, MUSA is entitled to receive "reimbursement for any sums expended by MUSA including but not limited to expenses for title examination, attorney's fees, appraisal, credit reports, survey, environmental studies, etc."

Also on April 8, 2022, pursuant to § 35-4-131, Ala. Code 1975, MUSA filed in the probate court a lis pendens notice describing the property. MUSA stated that it "claims a right, title, interest or claim in and to the … property." The probate court recorded the lis pendens notice on the same day.

On May 31, 2022, Allen Oil filed an amended complaint in which it "specifically waive[d] and withdr[e]w[] its claim for 'specific performance' …." Instead, Allen Oil asserted a breach-of-contract claim against MUSA based on MUSA's failure to perform under the sales contract and requested compensatory damages for "loss of sales, loss of income, and

10

any other form of damage recoverable for the breach of the [sales] contract ...."

On November 16, 2022, Allen Oil filed a "motion for summary judgment, or in the alternative partial summary judgment ...." In its summary-judgment motion, Allen Oil argued that MUSA, in the June 21, 2021, email that Senter sent to Gaines, repudiated the sales contract. As a result, Allen Oil argues, it was discharged from its duty to perform under the sales contract and, thus, MUSA cannot prevail on any of its counterclaims. On December 12, 2022, MUSA filed a response to Allen Oil's summary-judgment motion. Among other things, MUSA argued that Allen Oil, and not MUSA, repudiated the sales contract.

On December 14, 2022, Allen Oil filed in the circuit court a motion to expunge the lis pendens notice filed by MUSA in the probate court. Allen Oil stated in its motion that it "is in active negotiations with a third party to purchase the ... property that is the subject of this litigation." Allen Oil argued that MUSA cannot have a right to or interest in the property based on MUSA's alleged repudiation of the sales contract. Accordingly, Allen Oil requested that the circuit court enter an order expunging the lis pendens notice filed by MUSA and allow Allen Oil to

11

proceed with the sale of the property to the third party. On the same day, MUSA filed a response to Allen Oil's motion to expunge the lis pendens notice. MUSA argued that it holds equitable title to the property based on its execution of the sales contract and, thus, is entitled to the lis pendens notice throughout the pendency of this litigation.

On December 20, 2022, the circuit court entered an order granting Allen Oil's motion for a partial summary judgment. The circuit court concluded that Senter's June 21, 2021, email to Gaines "specifically terminated" the sales contract. The circuit court stated:

"In sum, [MUSA's] breach of contract claim against [Allen Oil] has no merit because [MUSA], by its own admission, repudiated the contract. Likewise, since [MUSA] repudiated the sales contract, it cannot seek specific performance of the sale of the subject real property since specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party. Stated another way, [MUSA] cannot maintain a claim to the subject real property under the terms of a contract that it has expressly repudiated."

As a result, the circuit court concluded:

"1. [Allen Oil's] motion for partial summary judgment as to [MUSA's] breach of contract claim is hereby GRANTED; said breach of contract claim is hereby dismissed.

12

> "2. [Allen Oil's] motion for partial summary judgment as to [MUSA's] specific performance claim is hereby GRANTED, said specific performance claim is hereby dismissed.
>
> "3. [Allen Oil's] motion for summary judgment as to [MUSA's] counterclaim for declaratory judgment is hereby DENIED."

The circuit court further stated that "the breach of contract claim plead[ed] by [Allen Oil] as to damages suffered as a result of [MUSA's] alleged breach of contract and [MUSA's] counterclaim for declaratory judgment regarding the same remain[] in dispute between the parties."

Also on December 20, 2022, the circuit court entered an order granting Allen Oil's motion to expunge the lis pendens notice filed by MUSA. The circuit court noted that, based on its order granting Allen Oil's motion for a partial summary judgment, MUSA's only counterclaim remaining against Allen Oil is its counterclaim requesting a declaratory judgment as to the parties' rights under the sales contract. The circuit court defined MUSA's declaratory-judgment counterclaim as requesting whether MUSA "was within its rights to cancel the sales [contract] because of its dissatisfaction with the … report …." As a result, the circuit court stated that "[t]he declaratory judgment claim of [MUSA] is not claiming 'a right, title, interest or claim in and to' the … property that is

13

subject to this circuit court action" and, thus, expunged the lis pendens notice. (Emphasis in original.)

MUSA then petitioned this Court for a writ of mandamus directing the circuit court to vacate its December 20, 2022, order expunging the lis pendens notice.

## Standard of Review

> "'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'
>
> "Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995)."

Ex parte State Dep't of Revenue, 886 So. 2d 817, 820 (Ala. Civ. App. 2003).

## Discussion

The only issue properly raised in MUSA's mandamus petition is whether the circuit court erred in expunging the lis pendens notice filed by MUSA.[1]  A recitation of the principles underlying Alabama's doctrine

---

[1]This Court has previously considered the propriety of a lis pendens notice on mandamus review.  See Ex parte Wallace & Wallace Chem. & Oil Corp., 417 So. 2d 940, 944 (Ala. 1982) (conditionally granting the

of lis pendens is helpful in analyzing the issue before us. Generally, "[t]he doctrine of lis pendens is for the purpose of preserving the property involved in the suit …." Willis v. Lewis, 25 Ala. App. 369, 370, 148 So. 330, 331 (1933). In Alabama, the majority of the common-law doctrine of lis pendens applies, with one significant statutory change, as explained in Jesse Evans's treatise on property law:

> "Under the common-law doctrine of lis pendens, the filing of an action respecting a right, title, interest in or claim to property placed the property in custodia legis, or in the custody of the court in which the action was commenced. Nothing else was required to be done to give notice of the pendency of the action other than the commencement of the action. … Under Alabama decisions, two things were required in order for the doctrine to have effect: the litigation must have been about specific property, and the property must be so pointed out in the proceedings as to warn the world of the pending litigation.

> "Once the action was filed the property became in custodia legis, purchasers pendente lite were bound by the result of the litigation as it affected the property, though they might never have been joined as parties to the action or have known of the existence of the litigation. This principle

---

petitioner's "application for writ of prohibition, or in the alternative, writ of mandamus" seeking to have the at-issue lis pendens notice stricken and determining that "there was simply no jurisdictional basis for [the trial court's] order to the clerk to direct the Probate Judge to file a notice of lis pendens"); see also Ex parte State Dep't of Revenue, 886 So. 2d 817, 823 (Ala. Civ. App. 2003) (in which the Court of Civil Appeals denied a petition for a writ of mandamus challenging the striking of certain names from a lis pendens notice).

operated not only during the pendency of the action but afterwards as well, that is, the result of the litigation bound subsequent purchasers.

> "The statutory doctrine of lis pendens, as it presently exists in Alabama, differs from the common-law doctrine only with respect to the requirement of the filing in the office of the judge of probate of a pendency of the action. The enactment of the lis pendens statute has been said to have substituted the statutory constructive notice requirements for the common-law doctrine, that is, the common-law doctrine remains in full force and effect, but only if the notice and filing requirements set out in the statute are complied with."

1 Jesse P. Evans III, Alabama Property Rights and Remedies § 5.13 (5th ed. 2012) (footnotes omitted).

Alabama's lis pendens statutes were originally adopted in 1915 and are currently codified at § 35-4-130 et seq., Ala. Code 1975. This Court has stated that

> "[t]he manifest purpose of the statute was to provide a means whereby one desiring to purchase land may ascertain if there is any pending suit which affects the title by examining the lis pendens record; that is, substitution of constructive notice rather than the rule of the common law as to pending suits."

Lee v. Macon Cnty. Bank, 233 Ala. 522, 528, 172 So. 662, 669 (1937). See also Scott v. Hales, 575 So. 2d 1058, 1060 (Ala. 1991) ("The sole purpose of a lis pendens notice is to afford notice to a bona fide purchaser who might purchase the property during the pendency of the action."). This

16

Court has also stated that "the doctrine of <u>lis pendens</u> is based on considerations of public policy and convenience, which forbid a litigant to give rights to others, pending the litigation, so as to affect the proceedings of the court then progressing to enforce those rights." <u>Reed v. Skeen</u>, 591 So. 2d 51, 52 (Ala. 1991).

Section 35-4-131(a), Ala. Code 1975, requires the filing of a lis pendens notice and states:

> "When any civil action or proceeding shall be brought in any court to enforce any lien upon, right to or interest in, or to recover any land, or where an application has been made to the probate judge of any county for an order of condemnation of land, or any interest therein, the person, corporation, or governmental body commencing such action or proceeding or making such application shall file with the judge of probate of each county where the land or any part thereof is situated a notice containing the names of all of the parties to the action or proceeding, or the persons named as those having an interest in the land in the application for an order of condemnation, a description of the real estate and a brief statement of the nature of the lien, writ, application, or action sought to be enforced. The judge of probate shall immediately file and record the notice in the lis pendens record and note on it and in the record the hour and date of the filing and the place and date of recording."

Section 35-4-135, Ala. Code 1975, states that,

> "[i]f the notice required by [§] 35-4-131 … shall not be entered in the lis pendens record, the action, proceeding, or application shall not affect the rights of a bona fide purchaser, lessee, or mortgagee of any interest in such land or any person

then or thereafter asserting a lien against such land unless he or they have actual notice of the action, proceeding, levy, or application."

These statutes, being in derogation of the common law, must be strictly construed. Stephens v. Huie, 37 So. 3d 776, 779 (Ala. Civ. App. 2009).

Of course, a lis pendens notice need not last forever. In fact, this Court has stated that "[t]he doctrine of lis pendens … is based upon the necessity that there be an end of litigation." Willis, 25 Ala. App. at 370, 148 So. at 331. This Court, relying upon Evans's treatise, has stated that

> "'[g]enerally, the doctrine of lis pendens <u>commences with the filing of an action</u> and the contemporaneous recordation of a notice of lis pendens, and continues for the duration of the litigation <u>until it is terminated by judgment and the expiration of any appropriate period for appeal, or appellate determination, if an appeal is taken</u>.'"

Walden v. Hutchinson, 987 So. 2d 1109, 1121 (Ala. 2007) (quoting Jesse P. Evans III, Alabama Property Rights and Remedies § 5.18 (3d ed. 2004)).

With these principles in mind, we now turn to the facts and arguments in the case at hand. As set forth above, MUSA and Allen Oil entered into the sales contract, which, among other things, required MUSA to pay to Allen Oil $1,250,000 in exchange for Allen Oil's conveying the property to MUSA. Neither of those things occurred. As a

18

result, Allen Oil sued MUSA for specific performance, requesting that the circuit court require MUSA to perform on the sales contract. MUSA, in turn, filed a counterclaim for specific performance, requesting that the circuit court require Allen Oil to perform on the sales contract. As stated in Ex parte State Department of Revenue, "[§] 35-4-131(a) requires a notice of lis pendens to be filed with the probate judge in the county where the real property lies in civil actions seeking 'to enforce any lien upon, right to or interest in, or to recover any land' ...." 886 So. 2d at 820. In the present case, a civil action was commenced in which both parties sought to enforce a "right to or interest in" the property.[2] § 35-4-131(a). Accordingly, pursuant to § 35-4-131(a), a lis pendens notice was required to be filed with the probate court, which MUSA did upon filing its counterclaim against Allen Oil. It appears that MUSA met all the requirements of § 35-4-131(a) in drafting its lis pendens notice (there is

---

[2]Allen Oil later dismissed its specific-performance claim and asserted a breach-of-contract claim seeking only money damages, see Stephens v. Huie, 37 So. 3d 776, 779 (Ala. Civ. App. 2009) ("The doctrine of lis pendens has no application when the action involved seeks the recovery of a money judgment. McCollum v. Burton, 220 Ala. 629, 127 So. 224 (1930) ...."), but the fact remains that, at the outset of this proceeding, both parties sought to enforce a right to or interest in the property and MUSA has maintained its specific-performance claim, even if Allen Oil has abandoned its own.

no argument otherwise), and the probate court recorded the filed lis pendens notice on April 8, 2022. The lis pendens notice was valid, and the doctrine of lis pendens applies in this case. In other words, with the commencement of the underlying action and the filing of the lis pendens notice, the property was placed in the custody of the circuit court and anyone who purchases the property during the course of this litigation will be bound by the result of the litigation, including any disposition on appeal, as it affects the property.

The circuit court, however, expunged the lis pendens notice before the conclusion of the litigation, thereby essentially removing the property from the custody of the circuit court and allowing any future purchasers to take the property free of the results of the current litigation. In its order expunging the lis pendens notice, the circuit court reasoned that, in its declaratory-judgment claim, MUSA "is not claiming 'a right, title, interest or claim in and to' the … property that is subject to this … action." (Emphasis omitted.) The circuit court further reasoned that it had "previously entered an order granting [Allen Oil's] motion for partial summary judgment that dismisses [MUSA's] claims of breach of contract and specific performance that directly relate to the … property.

20

Accordingly, [MUSA] does not have 'a right, title, interest or claim in and to' the … property." (Emphasis omitted.) The circuit court concluded that, because it had entered an interlocutory, partial summary judgment in favor of Allen Oil disposing of MUSA's counterclaims for breach of contract and specific performance -- a claim which clearly seeks to enforce a right to or interest in the property -- there is no longer a need to hold the property in its custody and to provide notice of the litigation to future purchasers, essentially allowing a purchaser of the property to take the property free of the results of this litigation during its pendency. We disagree.

As noted above, "the doctrine of lis pendens is based on considerations of public policy and convenience, which forbid a litigant to give rights to others, pending the litigation, so as to affect the proceedings of the court then progressing to enforce those rights." Reed, 591 So. 2d at 52. In filing its motion to have the lis pendens notice expunged, Allen Oil stated that it "is in active negotiations with a third party to purchase the … property that is the subject of this litigation." In other words, Allen Oil is attempting "to give rights to others, pending the litigation." Id. By expunging the lis pendens notice, it appears that the circuit court intends

21

to allow that sale to go through. The problem, of course, is that MUSA may appeal the circuit court's partial-summary-judgment order in favor of Allen Oil once there is a final, appealable judgment entered in the case below. The circuit court may have concluded that MUSA's specific-performance counterclaim has no merit, but that determination has not yet been presented to this Court for review, and we cannot now consider the circuit court's partial summary judgment in favor of Allen Oil on mandamus review because an adequate remedy exists by way of appeal. See Ex parte Griffin, 4 So. 3d 430, 435 (Ala. 2008). Until this litigation "'is terminated by judgment and the expiration of any appropriate period for appeal, or appellate determination, if an appeal is taken,'" the lis pendens notice must remain in effect. Walden, 987 So. 2d at 1121 (emphasis omitted). To conclude otherwise would subvert the purpose of the doctrine of lis pendens. Therefore, we conclude that the circuit court erred in granting Allen Oil's motion to expunge the lis pendens notice.

We note that Allen Oil makes extensive argument concerning whether MUSA repudiated the sales contract. Allen Oil takes the position that MUSA did not have a right to or interest in the property to enforce because MUSA repudiated the sales contract. It follows, Allen

Oil argues, that, if MUSA does not have a right to or interest in the property based on its repudiation of the sales contract, MUSA is not entitled to a lis pendens notice concerning the property. Allen Oil is correct in noting that the circuit court's order expunging the lis pendens notice is based on the circuit court's holding that MUSA no longer has a right to or interest in the property based on its repudiation of the sales contract. However, that particular holding was made by the circuit court in granting Allen Oil's motion for a partial summary judgment on some of MUSA's counterclaims. The circuit court specifically stated that its order expunging the lis pendens notice was based on the fact that it had "<u>previously entered</u> an order grating [Allen Oil's] motion for partial summary judgment that dismisses [MUSA's] claims for breach of contract and specific performance …." (Emphasis added.) In other words, the circuit court's expungement order is expressly based on its partial-summary-judgment order in which the circuit court held that MUSA had repudiated the sales contract. Therefore, any argument pertaining to whether MUSA repudiated the sales contract is an argument directed at the merits of the circuit court's partial-summary-judgment order and cannot now be considered on mandamus review. The

23

lis pendens notice must remain in effect for the duration of the litigation until it is terminated by judgment and the expiration of any appropriate period for appeal, or an appellate determination, if an appeal is taken. Allen Oil's argument does not provide a convincing basis for this Court to suspend application of the doctrine of lis pendens and deny MUSA's mandamus petition.

Allen Oil also argues that MUSA had another adequate remedy besides filing a petition for a writ of mandamus. Allen Oil argues that MUSA could have filed a postjudgment motion pursuant to Rule 59(e), Ala. R. Civ. P., requesting that the circuit court alter, amend, or vacate its order expunging the lis pendens notice. Allen Oil is incorrect. Rule 59(e) does not apply to interlocutory orders, such as the circuit court's order expunging the lis pendens notice. Ex parte Troutman Sanders, LLP, 866 So. 2d 547, 549-50 (Ala. 2003) ("By its express terms, Rule 59(e)[, Ala. R. App. P.,] applies only where there is a 'judgment.' That term is specifically defined in Ala. R. Civ. P. 54(a), as 'a decree and any order from which an appeal lies.' (Emphasis added.) Rule 59 does not apply to interlocutory orders, because such orders remain 'within the breast of the court.' Rheams v. Rheams, 378 So. 2d 1125, 1128 (Ala. Civ.

24

App. 1979). A 'Rule 59 motion may be made only in reference to a final judgment or order.' Malone v. Gainey, 726 So. 2d 725, 725 n.2 (Ala. Civ. App. 1999); see also Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988); Momar, Inc. v. Schneider, 823 So. 2d 701, 704 (Ala. Civ. App. 2001) (a Rule 59(e) 'motion may be taken only from a final judgment')."). This Court alone may provide MUSA with its only adequate remedy by granting its petition and issuing the requested writ.

## Conclusion

Based on the foregoing, we grant the petition and issue the writ of mandamus directing the circuit court to vacate its order expunging the lis pendens notice; the lis pendens notice is to be reinstated.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Bryan, Sellers, Stewart, Mitchell, and Cook, JJ., concur.